————o————

WASHINGTON COUNTY, Respondent, *vs.* ST. LOUIS & IRON MOUNTAIN RAILROAD Co., Appellant.

1. *Revenue—Board of equalization of railroad property.*—Its duties defined.
2. *Revenue—Board of equalization—Railroads—Assessment in counties—Pleading.*—Although it may appear from an allegation in the petition, that the board of equalization assessed the actual value of the railroad property in Washington county, instead of a share in the aggregate valuation proportional to the number of miles of road within the county, as required by law, yet if from the general tenor of the petition it appears that the sum assessed was ascertained by the methods which the law prescribes, the pleading will be held sufficient.
3. *Revenue—Board of equalization—Railroads—Assessment—Evidence—State auditor's certificate—Records of board.*—In a suit by the county to recover the amount of taxes assessed by the board of equalization against a railroad corporation, the State auditor's certificate to the County Court is not competent evidence to prove the action of the board. The record of its proceedings, which the board is required by law to keep, or its exemplification, is the best and only proper evidence for that purpose when attainable.
4. *Revenue—Board of equalization—Assessment without evidence.*—An assessment of valuations made by the board of equalization, without any evidence before it, would be invalid.
5. *Revenue—Auditor's certificate imperfect—Levy of tax—Action of board.*—While the auditor's certificate might be so imperfect as to justify the County Court in refusing to levy the tax, yet if it appears that the court, deeming the authority sufficient, has made the levy, this will not be disturbed if it also appear from other testimony that the action of the board was such as to authorize the levy.

*Appeal from Washington Circuit Court.*

*Dryden & Dryden*, for Appellant.

I. The petition, because it did not show what sum was apportioned by the board to the county for taxation, was bad. Without apportionment, no tax that could be levied could be legal. The county is authorized by the statute to levy taxes on the shares of the values apportioned to the county, but upon nothing else. The allegation then, that a sum was apportioned, was essential to the showing of the plaintiff's right to tax, and to sue and recover.

II. The auditor's certificate ought not to have been admitted. It was incompetent evidence for whatever purpose offered. 1st. If offered for the purpose of proving "the action" of the special board of equalization, it ought to have been rejected, because it was not the best evidence of the board's action, but it was no evidence of it. The statute creating this board, (Laws of 1871, p. 57, § 9) requires the board to keep a record * * * * and to file the same with the auditor (who is thus made the custodian and clerk of the board). The record thus kept, if any was kept, or a certified copy thereof, was certainly the best evidence of the action of the board, and in the absence of any statutory provision to the contrary was the only evidence. (Blackwell on T. T., 513–14; Dunn vs. Gaines & Gilbert, 1 McLean, 323; 14 Pet., 322.)

2. If the certificate was offered for the purpose of proving compliance by the auditor with the duty enjoined upon him, it was insufficient even for that purpose, because upon the face of it it appears not to be a compliance with the statutory requirement. The duty of the board was two-fold : First, under the 7th section of the act it is made its duty to adjust and equalize the aggregate valuation of all the property of the R. R. Co., as an entirety. This duty performed, the board must, secondly, under the 8th section of the act, apportion the valuation reached under the 7th section, to the several counties, cities and towns, according to rules laid down in that section.

The certificate read in evidence in this case is not a certificate in compliance with the statute—it does not certify to that which the law required the auditor to certify to, but plainly certifies to that with which the auditor has nothing to do. As the auditor certifies about a matter that he is not charged with by the law, and fails, wholly fails, to certify about a matter that he is charged with, his certificate is a mere nullity and proves nothing. It was plainly the duty of the auditor, the board clerk, under the 12th section, to give to the clerk of the County Court a certified copy of so much of the board's record as relates to apportionment under the 8th section. In no other way could he lawfully certify the action to the court.

*Fletcher, Reynolds & Relfe,* for Respondent.

I. The twelfth section of the act of March 10, 1871, directed and required the auditor to certify the action of said board to the clerk of the County Court, and section 13 makes that certificate the evidence upon which the County Court shall act. It is not only *prima facie* evidence of the amount of the value apportioned under section eight of the act to Washington county, but it is the only evidence that could be received, because it is made the evidence of that fact by the act itself, and the original certificate was produced and read at the trial. (Glasgow vs. Rowse, 43 Mo., 488.)

Lewis, Judge, delivered the opinion of the court.

Suit was instituted to recover the county taxes assessed on defendant's railroad and other property, in Washington county, for five years, from 1868 to 1872, inclusive. Upon a trial before the court, without a jury, judgment was rendered in favor of the plaintiff for the sum claimed, $16,038.81, with the statutory penalty of 2 1-2 per cent. per month, making a total of $22,859.30.

It is objected by defendant, that the plaintiff's petition failed to exhibit a cause of action, and that, even if this should be found otherwise, the proofs were not competent to

authorize the recovery.   The questions depend chiefly on the proper interpretation of " An act to provide for a uniform system of assessing and collecting taxes on railroads," approved March 10, 1871.

The fifth section of the act constitutes " a special board of equalization of railroad property," composed of the State auditor, State treasurer and register of lands, who "shall possess the same powers and discharge the same duties with reference to railroad property, as the State board of equalization with reference to all other property."   The sixth section provides for time and place of meeting.   Other sections are as follows : " Section 7.  The board shall thereupon proceed to adjust and equalize the aggregate valuation of the property of each one of the railroad companies liable to taxation under the foregoing sections of this act.   The board shall have power to summon witnesses by process issued to any officer authorized to serve subpœnas, and shall have the powers of a Circuit Court to compel the attendance of such witnesses, and compel them to testify.   They shall have power to increase or reduce the aggregate valuation of the property of any railroad company, in accordance with the evidence produced before them and as they may deem just and right.   If the said board should deem personal inspection of the property of any railroad company necessary to a thorough understanding of its value and a just decision, they shall have power to visit such road, and may adjourn from time to time for that purpose."

" Section 8.  The board shall apportion the value of all lands, workshops, depots and other buildings belonging to each railroad company, to the counties, cities or incorporated towns in which such lands, workshops, or depots and other buildings are situate ; and the aggregate value of all other property of each railroad company shall be apportioned to each county, city, or incorporated town in which such road may be located, according to the ratio which the number of miles of such road completed in such county shall bear to the whole length of such railroad."

It is apparent from an inspection of the seventh section that the first duty of the board is to consider in the aggregate, and as an entirety, all the property owned by each railroad company in the State. Its understood value is assumed to have been reported by the president of the company, under the second section. Is this reported estimate too high or too low? If either, it must be "adjusted," which, according to the received definition, means "fitted," "made accurate." The exact relation which the property bears to a money standard must be so fixed. Secondly, does one company upon a comparison of the extent and amount of its possessions with those of another, appear to have assumed a higher or a lower standard of values than that other? If so, they must be "equalized." These two processes comprehend the functions of the board under the seventh section. The power to "increase or reduce" is in like manner limited to the valuation of aggregates, and cannot be applied to divisible parts, whether by county boundaries or otherwise.

The aggregate valuation for each company's property being thus adjusted, and being also equalized upon a just ratio with all the others; the eighth section introduces a process of sub-division. Here is neither adjusting nor equalizing, but "apportionment" only. This, except as to lands, workshops, depots and other buildings, wholly ignores local values. It is based upon "the ratio which the number of miles of such road, completed in such county, shall bear to the whole length of such railroad." Thus, one county may contain railroad property worth far more than that within another, and may yet receive a smaller apportionment for taxation, by reason of having a less number of miles of road completed within its limits.

The petition, after various recitals touching the action of the board, proceeds to say: "That the total value of the property of the said defendant, the St. Louis and Iron Mountain Railroad company, in the county of Washington, so adjusted and apportioned as aforesaid by said board of equalization, subject to taxation for each of the years 1868, 1869, 1870, and

1871, was $281,630." The defendant holds this to be an allegation that the board fixed upon the sum specified as the actual value of the company's property within the county of Washington; and not as a share or an apportionment out of the valuation of the entire property. A critical interpretation of the language used might lead to such a conclusion. But other expressions in the same connection show substantially that a different meaning is intended. The general drift of the allegations is to the effect that the board, by the methods which the law prescribes, reached that sum as the share of Washington county in the aggregate valuation to be taxed.

Sections 9 and 12 of the statute are as follows; "Sec. 9. The board shall cause to be kept a fair record of all its proceedings and decisions; shall sign the same officially, and file said record in the office of the State auditor on its adjournment." "Sec. 12. The state auditor shall, in like manner, certify the action of said board had under the provisions of section 8 of this act, to the clerks of the County Courts of the proper counties, and to the secretaries of the several railroad companies, and thereupon the several County Courts shall levy for all county purposes, on such proportionate value as certified by the State auditor, such taxes as may be authorized by law at the same time and at the same rate as may be levied on other property."

Against the defendant's objections, plaintiff was permitted to introduce in evidence the auditor's certificate, as follows: "Auditor's Office, State of Missouri. To the Clerk of Washington county. It is hereby certified that the total value of the property of the St. Louis and Iron Mountain railroad in the county of Washington, subject to the taxation of the year 1872, as adjusted by the special board of equalization, provided by section 5 of "An act to provide for a uniform system of assessing and collecting taxes on railroads," approved March 10, 1871, is $281,630, and that the same valuation was fixed by said board for each of the years 1868, 1869, 1870, and 1871. In testimony whereof," etc.

Treating this certificate as sufficient in form, we might find it competent testimony to show that such a certificate was transmitted by the auditor to the clerk, and that thus one of the requisites of the law was fulfilled. But nothing else was offered to prove what was done by the board of equalization, and this appears to have been considered sufficient. For such a purpose the certificate was a nullity. Because the law requires one officer to certify to another, certain facts for his information and guidance, it does not follow that the certificate so given will suffice to prove the same facts in all suits and issues that may arise upon them. It is required that every execution shall state the fact, with date and amount of the judgment rendered. But no one would pretend, that in a suit founded on the judgment, the execution recitals would be competent proof of its existence and incidents. An exemplification of the record would be demanded, and nothing else would suffice. In that case, as in this, the law makes the certificate sufficient evidence for the officer to whom it is directed, to justify him in assuming the facts stated and acting accordingly. There its functions cease, for nothing more was intended. But, aside from general principles, the very act before us, as if anticipating issues to arise between other parties, provides a better grade of testimony. By the 9th section the board is required to keep a "record of all its proceedings and decisions." For what possible end, if not to preserve authentic evidence of those proceedings and decisions? This record, or its exemplification, was the best evidence of what the board had done; and a rule which is too well known to be repeated here, would admit no other form of testimony while this was attainable.

The rule requiring the best attainable evidence of any fact to be adduced is said to be founded on a reasonable presumption that the failure to produce it evinces the party's knowledge that its introduction would defeat or weaken his claim. The facts in this case seem to advance that presumption with peculiar force. It appears from the auditor's certificate that "the same valuation was fixed by said board" for each of the

five consecutive years. How did it achieve a procession of valuations so remarkably uniform? Considering it a matter of public and historical notoriety that the lengths, conditions and properties of all our railroads underwent very extensive changes during that five year period, a suspicion might be admissible that the board lightened its work by acting without testimony of any sort. If the records should confirm such a suspicion, it would simply invalidate the proceedings. The board was a body of special and limited authority, with duties clearly defined. By the seventh section of the act, it was invested with such ample powers to compel testimony for its safe and just guidance, that wholly to ignore them in the settlement of such important inquiries would be a gross violation of the spirit and manifest intent of the law. As well might a court of justice pronounce judgment depriving one of his property, or of his life, without a word of evidence in the case. But, however, this may have been, the *onus* was on the plaintiff to show that the board had performed its duties in the manner required by the law of its creation. Its records only could do this in an intelligible way.

The defendant objects that the certificate itself is not such as the law requires for any purpose; that it does not certify the "action of the board under the provisions of section 8;" that those provisions command not merely results, but methods of reaching them, and that the County Court was entitled and required to know that the board had substantially obeyed all the law contained in section eight, before levying the tax. It is insisted that no person, from a reading of this certificate, would ever discover that an apportionment had been made at all; and that it gives, instead of the "action of the board," only the auditor's conclusion therefrom; that moreover, his conclusion is a false one, if the board did its duty, since it furnishes not a sum representing an apportioned share in an aggregate valuation, but a sum which represents the actual value of the property found in Washington county.

Such objections might prevail in a different proceeding. If the County Court had refused to act upon this certificate,

and we were asked to compel it by *mandamus* to levy the tax, we might refuse a peremptory writ in the absence of a better showing that the auditor had done his duty. But the County Court having found the certificate sufficient for its information, we are unwilling to let the levy be disturbed in so far as it may be proved by competent evidence that the board acted in conformity with law.

The judgment will be reversed and the cause remanded for trial in conformity with this opinion; the other judges concur.