HANNIBAL & ST. JOSEPH RAILROAD COMPANY, Relator, *vs.* STATE BOARD OF EQUALIZATION, Respondent.

1 *State Board of Equalization—Legislation not necessary to effectuate constitutional provision regarding.*—The governor. State auditor, treasurer and secretary, and attorney general are constituted the State board of equalization by virtue of art. X, § 18, of the present Constitution, and authorized to act without any legislation to that effect.

2. *Railroad—Apportionment of taxation to counties, etc., constitutional.*— Section 8 of the act of March 15, 1875, (Sess. Acts 1875, p. 121) under which the amount of the "land contracts" of the Hannibal & St. Joseph Railroad Company was apportioned to the counties, cities and towns along the route of the road and its branches, is not unconstitutional.

3 *Taxation—Power of legislature regarding.*—The taxing power of the legislature is subject to no restrictions or limitation outside of the United States and State constitutions.

4. *Certiorari—State Board of Equalization—Evidence outside of record not subject to review.—Certiorari* is a common law writ, and can bring up for review only such facts as appear on the face of the record. Hence, where this writ is invoked against proceedings by the State Board of Equalization for the assessment of railroad property, inasmuch as the evidence below touching its value is not required to be preserved in the record, it cannot be examined. nor the appraisement of the board based thereon, disturbed by the Supreme Court.

5. *Board of Equalization—Power under act of* 1875 *to assess without hearing evidence—Power to assess under Const. art, X, § 18.*—Under § 7 of the act of 1875 (Sess. Acts 1875, p. 121) the State board of equalization had power to equalize, adjust and assess railroad property without the hearing of testimony. And it had the power to assess as well as to equalize and adjust under § 18, art X, of the present Constitution. (As to the construction of § 18 Napton and Hough J. J., did not concur.)

*Certiorari to review Assessment of State Board of Equalization.*

James Carr, for Relator.

I. The State senate was the proper board of equalization for 1876, instead of the governor and other State officers under the new Constitution. (Wagn. Stat. 1160, § 9; § 1, Schedule to the new Constitution. Dwar. Stat. 568.)

II. The Constitution does not execute itself *proprio vigore.* Legislative action is necessary to have that effect. (St. Jo. & Denver City R. R. Co. vs. Buchanan Co., 39 Mo. 485; Groves vs. Slaughter, 15 Pet. 449; Cool. Const. Lim., 35, 36,

78, 79 ; U. S. vs. Bevans, 3 Wheat. 336 ; Const. Conv., by Jamison, p. 83, § 427 ; *Idem.* § 434 ; Luther vs. Borden, 7 How. 1 ; Websters' Works, vol. 6, p. 221.)

III. The respondents acted as an *original* assessing board. This they had no right to do. They had only authority " to adjust and equalize " the property of the relator. (§ 18, art. X, of Constitution.)

IV. The act of the General Assembly upon which the resolution of the respondents apportioning the land contracts was based is *unconstitutional.* (§ 11, art X; § 3, *Ibid ;* § 21, art. II ; Livingston County vs. Hannibal & St. Jo. R. R. Co., 60 Mo. 516 ; Wells vs. City of Weston, 22 Mo. 384 ; St. Charles vs. Nolle, 51 Mo. 122 ; Cool. Const. Lim., 499 ; Morford vs. Unger, 8 Iowa, 82 ; Langworthy vs. City of Dubuque, 13 Id. 86 ; Latrobe, Trustee, vs. Mayor of Baltimore, 19 Md. 13 ; Johnson vs. Oregon City, 2 Oregon, 327 ; Johnson vs. City Council of Oregon City, 3 Id. 13 ; Portland, Saco and Portsmouth R. R. Co. vs. City of Saco, 60 Me. 196.)

V. The *situs* of personal property and choses in action is where the owner resides. The domicil of the relator is in the city of Hannibal. The land contracts are choses in action. They are properly taxable there. (§ 6, p. 1159, Wagn. Stat. ; State *ex rel.* Taylor, Adm'r, vs. St. Louis County Court, 47 Mo. 594 ; St. Joseph *ex rel.* vs. Saville, 39 Id. 460 ; City of Lexington vs. Aull, 30 Id. 480 ; Wilkey vs. City of Pekin, 19 Ill. 160 ; Sangamon & Morgan R. R. Co. vs. County Court of Morgan, 14 Id. 163.)

*J. L. Smith, Att'y Gen'l,* for Respondent.

I. Under the provisions of § 8, p. 121, Acts 1875, the board had authority to apportion to the counties, municipal townships, cities and incorporated towns along the line of the road the land contract funds, which were valued according to the return of the company. (Washington Co. vs. Iron Mt. R. R., 58 Mo. 372 ; State Railroad Tax Cases, 2 Otto, [U. S.], 607–611 ; Deleware Railroad Tax Case, 18 Wal. 208 ; Erie Railroad Co. vs. Penn. 21 Id. 492 ; 18 Wallace 2.)

II. The governor, State auditor, State treasurer, secretary of State and attorney general constituted the State board of equalization, from and after the adoption of the Constitution of 1875, and had full authority to assess, adjust and equalize all the railroad property of the State for the year 1875. (See § 18, art. X, of the Const., also Act 1875, § 7, p. 121 ; also Cent. Law Jour. vol. 3, No. 45.) And that section executed itself *proprio vigore*. Under the Act of 1875 the senate was the board, and the constitution simply transfers their powers to the executive.

III. Assuming but not conceding that said officers did not constitute the State board *de jure*, yet their action is good as *de facto* officers, and one binding on relators. (Harbaugh vs. Winsor, 38 Mo. 327 ; State vs. Dougherty, 45 Mo. 294.)

IV. Section 6—Wagn. Stat. 1159—is repealed by § 8, p. 121 of the acts of 1875, in so far as it applies to railroad property.

V. The power of equalization being conferred upon the board to be exercised upon their judgment and belief of the facts in each particular case, their discretion cannot be controlled or reviewed on *certiorari*. (Smith vs. Bd. Supervisors, 30 Ia. 531 ; 1 Bouv. Law Dic. 215.)

The board was not required to certify up the testimony, and there being no law to preserve the testimony by bill of exceptions or otherwise, this court can only look at the record the board was required to make and preserve. (Cent. P. R. R. vs. Placer Co., 34 Cal. 352 ; S. C. 32 Cal. 582 ; People *ex rel.* Board etc., 14 Cal. 479 ; 8 Abb. [N. Y.] Prac. 277 ; Jordan vs. Hayden, 36 Iowa, 9 ; Smith vs. Bd. Supt., 30 Iowa 531 ; Everett vs. C. R. & Mo. R. R. Co., 28 Iowa 417 ; 117 Mass. 564 ; 112 Mass. 206, 218 ; 109 Mass. 270 ; 38 N. Y. 377 ; 32 N. Y. 365 ; 35 N. Y. 558 ; 34 N. Y. 343 ; 28 Wis. 270 ; 29 Wis. 444.)

VI. In reference to taxation the constitution of the State is not so much to be regarded a grant of power, as a restriction or limitation of power. (Const. Mo. § 1, art. X ; Glasgow vs. Rowse, 43 Mo. 489 ; McCulloch vs. Maryland, 4 Wheat. 428 ; Cool. Const. Lim. 479 *et seq.*)

And no provision of the Constitution of this State, or of the United States, inhibits the legislature from enacting that rail-

way property shall be valued by the assessing power, and that valuation apportioned along the entire line of the railway according to the rule prescribed in section 8 of act of March 15th, 1875, for the purpose of taxation.

HENRY, Judge, delivered the opinion of the court.

On the 5th day of December, 1876, the relator filed in this court the following petition for a writ of *certiorari* to the State Board of Equalization in the above entitled cause, viz: " Plaintiff, who sues at the relation of the Hannibal and St. Joseph Railroad Company, states that under and by virtue of an act of the General Assembly of the State of Missouri, entitled ' An act to incorporate the Hann. & St. Jo. R. R. Co.,' approved February 16, 1847, the relator became, and ever since has been and still is a railroad corporation in said State, and as such said relator was authorized to build and maintain a railroad from the town (now city) of Hannibal in said State to the town (now city) of St. Joseph in said State; and also to build and maintain such branches as the relator might deem to its interest, and the public convenience might require; that in pursuance of said charter, the relator did build, and in the year 1859 it did complete, a railroad from said city of Hannibal to said city of St. Joseph called and known as the Hann. & St. Jo. R. R., and has been ever since, and still is, maintaining and operating the same; and in the year 1867 said relator became the owner of the Quincy and Palmyra branch of said Hann. & St. Jo. R. R.; and in the year 1870, said relator became the owner of the Kansas City and Cameron branch of said Hann. & St. Jo. R. R. ; and said relator has been ever since, and still is, maintaining and operating said branches ; that under said charter of the relator its property was exempt from the payment of all State and county taxes ; but under the act of the General Assembly of said State, entitled ' An act to accept a grant of land made to the State of Missouri by the Congress of the United States, to aid in the construction of certain railroads in this State, and to apply a portion thereof to the Hann. & St. Jo R. R.,' approved September the 20th, 1852, said exemption was modified so as to require said

relator to pay into the State Treasury, on the first Monday in December of each year, after the said Hann. & St. Joe. R. R. was completed and opened and a dividend declared, a sum of money equal to the amount of the State tax on other real and personal property of like value, for that year, upon the actual value of the road-bed, buildings, machinery and engines, cars and other property of said relator, which shall be as a consideration to the State for the execution of the trust reposed in the State by the act of Congress of the United States, approved June 10, 1852, entitled ' An act granting the right of way to the State of Missouri, and a portion.of the public lands to aid in the construction of certain railroads in said State ;' and for the purpose of ascertaining the value of the same, it shall be the duty of the president of the relator, on the first day of February in each year, after the said road is completed. opened and put in operation, and declares a dividend, to furnish to the Auditor of the State a statement, under oath, made before and certified by some officer authorized to administer oaths, the actual value of the road-bed, buildings, machinery, engines, cars and other property of said relator ; and from said statement, so furnished, the auditor shall charge said relator with the amount appearing to be due the State, according.to the statement furnished, as herein required, by the president of said relator.

Plaintiff further states, that in and by the fourth section of said act of the General Assembly of said State, the relator was required to accept the provisions of said act within sixth months after the passage thereof ; said acceptance to be executed by said relator under its corporate seal, and filed in the office of the Secretary of State, which was done on the terms, in the manner and within the time required.

Plaintiff further states, that in pursuance of said act of the General Assembly of said State, on the first day of February, 1876, the president of said relator furnished to the State Auditor a statement, under his oath, made before and certified by an officer authorized to administer oaths, of the actual value of the road-bed, buildings, machinery, engines, cars and other property of the relator on said first day of February, 1876, and

filed said statement in the office of said State Auditor ; that the aggregate valuation of all of said relator's property, on said first day of February, 1876, was the sum of $5,707,342.75, as shown by said statement returned to and filed with said Auditor as aforesaid ; that under said act it was the duty of said State Auditor, from said statement, to charge said relator with a sum of money equal to the amount of the State tax on other real and personal property of like value for that year, upon the actual value of the road-bed, buildings, machinery, engines, cars and all other property of said relator ; that said State Auditor did not, from said statement, charge the relator with a sum of money equal to the amount of the State tax on other real and personal property of like value for that year, upon the actual value of the road-bed, buildings, machinery, engines, cars and all other property of the relator, as it was, by said act, his duty to do.

Plaintiff further states that ever since the completion of said Hann. & St. Jo. R. R. as aforesaid, the chief office and place of business of said relator has been and still is in the city of Hannibal, in the county of Marion and State of Missouri ; that in the itemized statement returned to and filed with said State Auditor, by said president of the relator, there is an item for ' land contracts,' (face) $2,560,608.88 ; that said contracts are for lands granted to the State of Missouri by said act of congress, and by said act of the General Assembly of said State to said relator, as aforesaid, to aid in building said Hann. & St. Jo. R. R., and by which contracts the relator had agreed to sell and convey the lands embraced in said contracts to the purchasers thereof, upon the full payment of the purchase money therefor, said lands having been sold on time and the title withheld until the full payment of said purchase money should be made.

Plaintiff further states, that on the second Tuesday in May, 1876, said State Auditor laid said statement of the President of the relator, furnished to him as aforesaid, before the respondents as the State Board of Equalization, and the respondents, as the State Board of Equalization, assumed to have jurisdiction over railroad property in said State, and over the property of the relator, and also to have all the powers and authority of an original

assessing board over said property; and the respondents proceeded to perform the duties of an original assessing board over the property of the relator, and between the second Tuesday in May, 1876, and the 20th day of June following, the respondents, acting as the State Board of Equalization, heard testimony in regard to the value of the relator's property, and then fixed such valuation upon said property as, in their judgment, should be fixed thereon for taxation purposes, to-wit: at the sum of $7,800.104.05; and in fixing said valuation the respondents arbitrarily fixed it according to their own opinion of what said valuation should be, without having personal knowledge of the value of the relator's property, and without having made any examination and inspection of said property for the purpose of ascertaining said value, and ignoring the valuation in almost every particular which the president of the relator had placed and fixed upon said property in said statement returned to and filed with said State Auditor as aforesaid; and likewise ignoring the testimony of the witnesses introduced before the respondents, in regard to the value of the relator's property, and which testimony fully sustained the valuation of the relator's property which had been placed thereon by the president of the relator as aforesaid in his statement returned to and filed with the State Auditor as aforesaid, and proves that said president had placed, fixed and returned said property at its actual cash value.

Plaintiff further states that on motion of Mr. McGrath the respondents adopted the following resolution, viz: 'Resolved, that the amount of land contracts of the Hann. & St. Jo. R. R. Co. be apportioned to counties, cities and incorporated towns along the line of the main and branch lines of said road.'

Plaintiff avers that the respondents had no jurisdiction over the property of the relator to assess, and adjust and equalize it for taxation purposes.

Plaintiff avers that if the respondents had jurisdiction over the relator's property, it was only to adjust and equalize it, and not to act as an original assessing board. And plaintiff avers that the respondents in acting as an original assessing board of the

relator's property, as hereinbefore stated, exceeded their jurisdiction, and that the assessment thus made is null and void.

Plaintiff avers that the respondent did not make said assessment according to the evidence adduced before them by the relator ; but they, without evidence and contrary to evidence, arbitrarily placed and fixed such valuation upon the relator's property as in their opinion should be placed and fixed upon said property, for the purpose of raising a given amount of revenue, without knowing the value of said property, and without having made any examination and inspection of said property for the purpose of ascertaining said value.

Plaintiff avers that the excess in the valuation of the relator's property, over and above the valuation placed and fixed upon it by the president of the relator as aforesaid, is unjust, excessive, erroneous and illegal.

Plaintiff avers that the respondents, in apportioning the amount of the land contracts of the relator to the counties, cities and incorporated towns, along the main line of the Hann. & St. Jo. R. R. and branches, acted without the authority of any law ; and plaintiff further avers, that said contracts were and are taxable only in the city of Hannibal, in the county of Marion, in said State.

Plaintiff further states that the respondents, whilst acting as the State Board of Equalization as aforesaid, caused to be kept, and kept, a fair and full record of its proceedings and decisions, and caused the same to be signed officially by the president and secretary thereof, and on the 20th of June, 1876, filed said record in the office of Thomas Holladay, as the State Auditor of the State of Missouri on its adjournment (said State Board of Equalization having adjourned on said day), and said record has been ever since, and still is, on file in the office of said State Auditor.

Plaintiff further states that said Thomas Holladay, as State Auditor of said State, on the receipt of the proceedings of said State Board, charged to the relator on the valuation of the relator's property, as fixed by said State Board of Equalization as aforesaid, the amount of taxes found to be due the State on each of the several

funds, to-wit: with the sum of $15,600.15 for State revenue tax for the year 1875, and with the sum of $15,600.15 for State interest for the same year; and on the 20th day of June, 1876, said Thomas Holladay, as State Auditor aforesaid, certified the action of said State Board, together with the amount of taxes due to the State upon each fund to the secretary of the relator and said Thomas Holladay as State Auditor aforesaid certified said proceedings of said State Board to the clerks of the county courts of all the counties in said State, in which the relator's property was and is located, as required by the statute in such cases.

Plaintiff further states that said valuation of the relator's property by said State Board of Equalization was placed and fixed at the sum of $7,800,104.05, under and in pursuance of the statutes of said State in regard to the assessment of railroad property and the collection of taxes thereon.

Plaintiff avers that the excess of said valuation over and above the valuation placed and fixed upon the relator's property by the president of the relator as aforesaid, viz; the sum of $2,092,-761.30, is excessive, erroneous, illegal and unjust.

Plaintiff further avers that said proceedings of said State Board of Equalization were altogether outside of the course of the common law, and likewise outside of any statutory judicial proceedings; and that no writ of error lies to such proceedings from this or any other court, and no appeal is provided by law or allowed to this or any other court.

Plaintiff further states that at the time of the respondents making said assessment and valuation of the relator's property as hereinbefore stated, Charles H. Hardin was, and still is, the governor of the State of Missouri; Michael K. McGrath was, and still is, the Secretary of the State of Missouri; Thomas Holladay was, and still is, the State Auditor of the State of Missouri; Joseph W. Mercer was, and still is, the State Treasurer of the State of Missouri, and John A. Hockaday was, and still is, the Attorney General of the State of Missouri, and they sat and acted as the State Board of Equalization of said State.

Plaintiff therefore prays this court to issue the State's writ of *certiorari* directed to the respondents in their official capacity as hereinbefore stated, and to Thomas Holladay as State Auditor, as the custodian of the record of the proceedings and decisions of said State Board of Equalization, as hereinbefore stated, requiring a true, full and complete copy of said State Board of Equalization in regard to the assessment and valuation of the relator's property; and also of the statement of the president of the relator's property returned to and filed with said State Auditor as hereinbefore stated; and also the evidence introduced before said State Board of Equalization in regard to the value of said property and all other acts and proceedings of said State Board of Equalization in regard to said assessment and valuation, and have said copy returned to this court on or before the —— Monday in December, 1876, in order that this court may adjudicate upon the legality of said assessment and valuation of the relator's property as made by said State Board of Equalization, and may make such other and further adjudications and orders thereon as right and justice may require."

"JAMES CARR,
Attorney for Relator."

On the 8th day of December following, this court ordered a writ of *certiorari* to be issued returnable on the 16th of December, and on that day respondents made their return. To the return relator filed exceptions which were sustained, and on the following day they filed an amended return, to which exceptions filed by relator were also sustained. On the 25th day of January, 1877, the respondents filed the following second amended return, viz :

"And now come the respondents, and for their amended return and answer to the rule awarded against them in the above entitled cause, state that they, acting as a State Board of Equalization in the discharge of their duties as such under the laws of this State, kept a journal of their proceedings which is filed in their return to said writ of *certiorari ;* that they were not required by law, and did not preserve by bill of exception or otherwise, all the testimony taken by them and upon which their said

action was based, and that they have not now and never have had in their possession, custody or under their control, any testimony taken by them other than as heretofore has been returned in this case, and that it is out of their power to return all of said testimony and evidence; and that everything that remains of record before them has already been returned in this proceeding.

"STATE BOARD OF EQUALIZATION,"

By J. L. SMITH, Attorney General.

In their first return to the writ respondents denied that the valuation of the property of relator, fixed and returned by its president for the taxes for 1875, was correct, and aver that it was far below the cash value of the said railroad and property of relator.

They denied that they assessed, adjusted and equalized said property, without first having evidence, or without any knowledge of its value, or that they made no examination of the property in order to ascertain its value, and allege that they examined witnesses well informed in regard to the value of the property, and heard all the evidence offered by relator on the subject, and that the assessment, equalization and adjustment of said property was made in accordance with the evidence.

Relator contends that the State Senate, and not respondents, was the Board of Equalization for 1876.

Section 18, art. 10 of the new Constitution provides that; " there shall be a State Board of Equalization consisting of the Governor, State Auditor, State Treasurer, Secretary of State, and Attorney General. The duty of said Board shall be to adjust and equalize the valuation of real and personal property among the several counties in the State, and it shall perform such other duties as are or may be prescribed by law."

It is insisted, that this section does not constitute the officers named a board of equalization, but that legislation is necessary to give it effect. The word "shall," argues the counsel, "imports futurity." Whether it does or not depends upon the subject of the sentence, and the context with which it is related.

What it means in the 18th section will more fully appear on an examination of the laws, which existed prior to the adoption of

the constitution, in regard to equalization and adjustment of property for taxation.

When the constitution was adopted there was a State Board of Equalization composed of the State Senate. There were acts of the General Assembly prescribing the powers and duties of the Board. Sec. 18, Art. 10, provides that the Board " shall perform such other duties as are or may be prescribed by law." It will not be contended that the word " are " imports futurity, and this board, composed of the governor and other State officers, shall perform such duties as *are* prescribed by law at the adoption of the constitution. If the intention had been that the legislature was to pass an act to create this board, is it to be supposed that such phraseology would have been employed? Besides, where is the necessity for a legislative enactment, when the constitution designates the members of the board and prescribes its duties?

The constitution provides sec. 1, art. 5, that " the executive department shall consist of a governor," etc. Section 4, " The Supreme executive power shall be vested in a chief magistrate," etc.

Article 6, sec. 1, " The judicial power of the State shall be vested in a Supreme Court, etc." Is there any legislation required to make the executive department " consist of a governor, etc.," to vest in the supreme court the judicial power of the State, or to vest the Supreme executive power in a chief magistrate, etc. ?

The duties of the old board under the law are immediately imposed by the constitution upon the new board. In the case of Ketchum vs. The Pac. R. R., reported in the Central Law Journal, vol. 3, No. 45. p. 726, Judge Treat held " that the Board of Equalization under the new constitution became at once the only board thereafter for that purpose, and was clothed with all the powers and duties of the board for which it was substituted, and that its acts are valid and obligatory."

The counsel argues that the first section of the Schedule continues the old board in existence. That portion of the section bearing upon this point is as follows:

" All laws in force at the adoption of this constitution not in-consistent therewith, shall remain in full force until altered or re-pealed by the General Assembly." The law creating the old board is inconsistent with the new constitution, for that makes the senate, and this makes the State officers, the board, and our answer to the position of relator is simply a repetition of our views as to the proper construction of section 18.

It is contended that the act of the General Assembly, upon which the resolution of the board apportioning the tax on the land contracts of the company was based, is unconstitutional.

In support of this position we are referred to numerous au-thorities to the effect that the *situs* of personal property and choses in action is where the owner resides, and they are properly taxable there.

The authorities fully establish that proposition, but taxing the property and apportioning taxes are two different procedures. In Washington County vs. St. L. & I. M. R. R. Co., (58 Mo. 376) Judge Lewis delivering the opinion of the court makes the dis-tinction in commenting on section eight of the act of 1871, which is substantially the same as section eight of the act of 1875. He remarks : "The aggregate valuation for each company's property being thus adjusted, and being also equalized upon a just ratio with all others, the eighth section introduces a process of sub-division. There is neither adjusting nor equalizing, but appor-tionment only. This, except as to lands, workshops, depots and other buildings, wholly ignores local values. It is based upon ' the ratio which the number of miles of such road com-pleted in such county shall bear to the whole length of such rail-road.' Thus one county may contain railroad property worth far more than that within another, and may yet receive a smaller apportionment for taxation by reason of having a less number of miles of road completed within its limits."

In the State Railroad tax cases, (2 Otto, U. S. 601) the court gives a synopsis of the act of the legislature of Illinois of March 30, 1872, and says ; " The theory of the system is manifestly to treat the railroad track, its rolling stock, its franchise and its capital as a unit for taxation, and to distribute the assessed value

of this unit according as the length of the road in each county, city and town, bears to the whole length of the road."

Again, on page 607 : " Another objection to the system of taxation by the State is, that the rolling stock, capital stock and franchise are personal property, and that this, with all other personal property, has a local *situs* at the principal place of business of the corporation, and can be taxed by no other county, city or town, but the one where it is situated.

" The objection is based upon the general rule of law that personal property, as to its *situs*, follows the domicile of the owner. It may be doubted, very reasonably, whether such a rule can be applied to a railroad corporation as between the different localities embraced by its line of road."·

" But after all, the rule is merely the law of the State which recognizes it."

" Like all other laws of a State, it is, therefore, subject to legislative repeal, modification or limitation ; and when the legislature of Illinois declared that it should not prevail in assessing personal property of railroad companies for taxation, it simply exercised an ordinary function of legislation."

The same general proposition is maintained in Deleware Railroad tax case, 18 Wall. 208 ; Erie Railroad vs. Penn., 21 Wall. 292, and directly in point is the case of Washington County vs. I. M. R. R. Co., 58 Mo. 372.

The taxing power belongs to the legislature, and is subject to no restrictions or limitations outside of the United States and State Constitutions. (Dwarris on Stat. & Const., 421 and cases there cited.)

The bill of rights of the constitution of 1865, provides that " all property subject to taxation ought to be taxed in proportion to its value."

Section 27 art. 4, prohibits the legislature from exempting from taxation, any property of any named person or corporation.

The new constitution contains the same restrictions, and also provides that the State tax on property exclusive of the tax necessary to pay the bonded debts of the State shall not exceed a certain amount on the hundred dollars valuation.

These are about the only limitations on the taxing power in this State, and section eight of the law of 1875 contains nothing in conflict with these constitutional provisions. It does not make the burden of taxation on the relator any greater, and if any one has grounds of complaint against the law, it is not the company, but such of the towns, cities and counties through which the road runs as receive less, in consequence of this apportionment, than would otherwise fall to their share of the taxes received from the company.

We have no statute in this State regulating the practice on proceedings by *certiorari*, and are to look to the common law for a guide in such cases.

"It is a writ in the nature of a writ of error addressed to an inferior court or tribunal whose procedure is not according to the course of the common law, 117 Mass. 564." A common law writ of *certiorari* only brings up the record and can only reach defects, or errors in the proceedings of the tribunal to which it is issued, which appear upon the face of the record, and which go to the jurisdiction of that tribunal. The evidence is no part of the record, and it is not the office of the writ to bring up the evidence for review. (28 Wis. 271.)

In *certiorari* proceedings the determination of the question involved is to be made upon the return ; facts cannot be brought to the attention of the court outside of the return which do not appear therein. (36 Iowa, 15.)

The relator in its petition alleges, that the board, without evidence and against evidence, arbitrarily increased the valuation of its property.

The return denies that allegation, and the journal of the proceedings of the board shows that evidence was heard by the board as to the value of that property, but not what that evidence was.

The board was required by the law to keep a full record of its proceedings and decisions, but not of the evidence adduced. That is no part of the record and proceedings of a court in any case until made so by a bill of exceptions or otherwise provided by law. There is nothing before us but the proceedings of the board made part of respondent's return to the writ. There was

no offer to prove the allegations in the petition, nor, if offered, could this court have heard it. But if the journal showed that the board heard no evidence, that would not invalidate their action.

The State Board of Equalization had full power to assess and equalize property under the act of 1875, sec. 7, p. 121, acts of 1875.

This act was in force when the new constitution was adopted, and when the new board equalized, adjusted and assessed relator's property.

It is, however, contended, that the constitution having provided that the duty of the board shall be to equalize and adjust, its jurisdiction is restricted to equalizing and adjusting, and that any power given to the old board by the law of 1875 to assess, is in conflict with the constitution; that the jurisdiction of this tribunal was not designed to be as fluctuating as the popular will, but to be as fixed and stable as the constitution itself.

There is plausibility and force in the argument, but we are not to presume that the framers of the constitution were ignorant of the law then in force creating the board and prescribing its duties. Before adopting a new system by creating a new board, we may reasonably assume that they informed themselves of the existing law on that subject. The constitution expressly provides that, in addition to equalizing and adjusting it should perform "such other duties as are or may be prescribed by law." We must then look both to the constitution and the law in force at its adoption to ascertain what duties the board had to perform, and as the law of 1875 made the old board assessors, the new board coming in their stead, is also empowered to assess as well as to equalize and adjust. This point was so ruled by Judge Treat in the case above cited.

Every citizen has an appeal from the assessment of his property for taxation, and railroad companies should have the same right. The writ of *certiorari*, we have seen, does not enable them to have the action of the board reviewed upon the evidence; and great injustice might be done them by a board for which

they would be remediless until the legislature shall have provided for an appeal in their favor; the courts cannot interpose between the board and the companies.

With the concurrence of the other judges, the judgment will be for respondents; Judges Napton and Hough concur, except as to the construction given sec. 18, art. 10 of the new constitution.