THE STATE ex rel. PARKER-WASHINGTON COMPANY, Appellant, v. CITY OF ST. LOUIS et al.

**Division One, November 27, 1907.**

1. **NUISANCE: City Improvement: Mixing Material in Street.** A city is not estopped to declare the mixing and making of a material in the public street or elsewhere in the city to be a nuisance, or to abate it as such, by the fact that the material when mixed and made is to be used by its contractor in improving the street under a contract with the city calling for the material.

2. **————: Committed by City.** A city cannot itself commit a public nuisance or authorize any person to do so, that is, commit an act destructive of the comfort of the people residing in the vicinity and injurious to the public health.

3. **————: ————: Governmental Capacity.** A city in the exercise of its police powers to protect life and health acts in its governmental capacity, and is not estopped to exercise those powers by its administrative acts, such as its contracts for improving its streets. It can declare the acts of a contractor who holds a contract with it to use a certain materiel in improving a street, to be a nuisance, and stop him from mixing the materials, to be so used, in such a way as to be injurious to the public health or destructive of the comfort of the inhabitants of the vicinity. Neither can it abandon its duty in that respect, even if it willed to do so.

4. **————: Authorized by City.** The Municipal Assembly of St. Louis cannot by ordinance authorize persons who hold city contracts for improving streets to carry on an operation destructive of public health or loading the atmosphere with offensive odors, to the serious annoyance of the surrounding inhabitants.

5. **————: Certiorari: Evidence.** A writ of *certiorari* brings up only the record proper of the tribunal to which it is addressed. Therefore, the court cannot know whether or not the evidence justified the conclusion of the Board of Health that relator's act constituted a nuisance; but where the record shows that the board was dealing with a subject within its peculiar province and that its proceedings were regular, the court must be satisfied with its decision.

State ex rel. v. St. Louis.

6. ——·—: **Disqualified Commissioner.** The fact that the Health Commissioner, before the meeting of the Board of Health, of which he was a member, had stated in the written notice to relators that in his opinion their works as operated constituted a nuisance and were detrimental to the public health, did not disqualify him from sitting as a member of the board, although without him there was no quorum of its members at the hearing.

7. ——: ——: **Ordinances.** The ordinances of St. Louis make it the duty of the Health Commissioner, when a matter injurious to public health is brought to his notice or comes under his observation, to declare it a nuisance by force of his own official judgment, and to give notice to the offending party to appear before the Board of Health and show cause why the offense should not be abated; but they do not mean that he must in every case declare the thing a nuisance before the board can pass judgment of condemnation upon it, nor does he by discharging that duty disqualify himself from sitting on the board that passes such judgment.

8. ——: **Due Process of Law: Impairment of Contract.** The proceeding of condemnation by the Board of Health, declaring the relators' plant, as then being operated, a menace to public health and a nuisance, and ordering them to abate it, and admonishing them that they will be liable to prosecution and a fine if they do not abate it, where the city has not laid its hands on them or their property, does not so deprive them of their property without due process of law or so impair the obligation of their contract with the city to improve its street as to make the board's action illegal; but their constitutional rights, in those respects, will be considered when they are prosecuted for not obeying the judgment of the board.

Appeal from St. Louis City Circuit Court.—*Hon. Walter B. Douglas*, Judge.

AFFIRMED.

*Barclay & Fauntleroy* for appellant.

(1) A process of preparing material for street construction, in conformity to ordinances and under contract with the city, cannot properly be declared, by the city itself, to be a nuisance. Trans. Co. v.

Chicago, 99 U. S. 635; Clemens v. Ins. Co., 184 Mo. 46; Van de Vere v. City, 107 Mo. 83; Payne v. Railroad, 112 Mo. 17; Casey v. Hoover, 114 Mo. App. 61; 1 Ency. Law (2 Ed.), 90, note; Railroad v. Brown, 67 Ind. 45; Railroad v. Joliet, 79 Ill. 25; Clark v. Syracuse, 13 Barb. 32; Vason v. Railroad, 42 Ga. 631; Weeks v. Milwaukee, 10 Wis. 269; Hannibal v. Richards, 82 Mo. 336; Randle v. Railroad, 65 Mo. 325. (2) The final decision or order of the board should have been quashed by the trial court as beyond the jurisdiction of the board, both as to form and substance. The whole chapter of the city charter, creating the office of Health Commissioner and the Board of Health, severs their powers and duties in regard to declaring and abating nuisances. The commissioner is a member of the board, yet he has no right to adjudge as to nuisances, because the charter declares: "All condemnations must first be approved by the Board of Health, whose action thereon shall be final." R. S. 1899, sec. 3, p. 2523. This language means that the commissioner shall not act in the board in declaring nuisances. It severs the Health Commissioner from the board, in dealing with this particular phase of city powers.

*Charles W. Bates* and *Charles P. Williams* for respondents.

(1) In cases other than the one at bar, where it is simply a question of deciding whether in effect a nuisance condemned by law and identified by law does exist, the Board of Health could be empowered to make a valid and conclusive finding. Heath v. Wallace, 138 U. S. 573; Public v. Coyne, 194 U. S. 508; Buttfield v. Stranahan, 192 U. S. 470; Long Island Co. v. Brooklyn, 166 U. S. 685; Hibben v. Smith, 191 U. S. 310; Aldrich v. Yates, 95 Fed. 78; Passavant v. U. S., 148 U. S. 214; U. S. v. Ju Toy, 198 U. S. 253; Gardner v.

Bonesteel, 180 U. S. 362; Bates v. Payne, 194 U. S. 106; Reetz v. Michigan, 188 U. S. 505. (2) Our writ of *certiorari* is strictly the common law writ of that name; by virtue of this writ only the record of the inferior court is caused to be brought up, and the function, duty and power of the reviewing court is limited to the examination of that record. Sholar v. Smith, 3 Mo. 294; Hicks v. Merry, 4 Mo. 355; Railroad v. State Board, 64 Mo. 308; State ex rel. v. Teasdale, 101 Mo. 174; State ex rel. v. Walbridge, 62 Mo. App. 162; State ex rel. v. Walbridge, 69 Mo. App. 666; State ex rel. v. Meyer, 57 Mo. App. 198; Ward v. Board of Equalization, 135 Mo. 319; State ex rel. v. Bland, 168 Mo. 1; State ex rel. v. Baker, 170 Mo. 390. (3) No authority is shown to appellants to maintain a nuisance. The city, under its charter, has no power to license a nuisance; and appellants neither allege that their business was a nuisance *per se* nor that they were conducting it with any care whatsoever to avoid its becoming a nuisance. (4) The Health Commissioner was not disqualified by reason of interest or otherwise. State ex rel. v. Lupton, 64 Mo. 415; State ex rel. v. Slover, 113 Mo. 202; Mayor of Lexington v. Long, 31 Mo. 369; Foote v. Stiles, 57 N. Y. 399; In re Ryers, 72 N. Y. 14; People v. Diehl, 53 N. Y. (App. Div.) 645, 165 N. Y. 643; People v. Police Commissioners, 10 Hun 108; People ex rel. v. Common Council, 85 Hun 601; Fuller v. Ellis, 98 Mich. 96; Andrews v. King, 77 Me. 224; Conklin v. Squire, 29 Weekly Law Bulletin, 157; City Council v. Township Board, 22 Mich. 341; Planet v. Everest, 29 Mich. 19; Township Board v. Holihan, 46 Mich. 127; State v. Crane, 36 N. J. Law 394; State v. Board, etc., 36 N. J. Law 404; Ayers v. Newark, 49 N. J. Law 170; State ex rel. v. Common Council, 96 Wis. 612; Grundy County v. Tennessee, 94 Tenn. 294.

VALLIANT, P. J.—The relators sued out a writ
of *certiorari* in the circuit court, against the defend-
ants, the city of St. Louis, the Board of Health and the
Health Commissioner of the city, the aim of which was
to quash the record of the Board of Health declaring a
certain plant, which relators were operating in the
city, a nuisance, inimical to the public health. Upon
the final hearing the court quashed the writ of *cer-
tiorari* and from that judgment the relators have tak-
en this appeal.

From the record it appears that the relators had
contracts with the city for the improvement of certain
streets which required the use of a material called
"binder," in the composition of which melted asphalt-
um at a high degree of temperature mixed with other
material was used, which process of melting and mix-
ing was being conducted by relators within the city
limits, when a written complaint was filed with the
Health Commissioner by twenty-eight resident tax-
payers in the vicinity saying that the operation "sends
out, fills and permeates the surrounding atmosphere
in and about our homes and the streets fronting the
same with a most offensive, obnoxious and foul smell-
ing odor which is a constant source of annoyance and
makes life in and about the neighborhood in which we
live intolerable." And besides the discomfort it was
charged that the fumes and gases were injurious to
health. Four days after receiving that complaint the
Health Commissioner caused to be served on the re-
lators a written notice that in his opinion the business,
as they were conducting it, was a nuisance and injur-
ious to public health and would be so reported to the
Board of Health on the 23rd day of July, 1903, and
notified them to appear before the board on
that day and show cause why the nuisance
"should not be abated, discontinued or removed."
The relators appeared before the board and were rep-

resented by counsel; a trial was had, proof pro and con, documentary and oral, was introduced and the result was that on August 17th, 1903, the trial was ended and the Board of Health entered on its record an order declaring that: "As operated at present the vapors evolved by the plant are offensive to the residents of the vicinity, impair the reasonable and comfortable enjoyment of their homes, are prejudicial to health, and, therefore, constitute a nuisance as defined by section 617 of the Municipal Code," and the Health Commissioner was directed to order the abatement, discontinuance or removal of said nuisance within such time as he might deem reasonable.

Four days thereafter the Health Commissioner issued a notice in writing to the relators, reciting the order of the board and notifying them to remove, abate or discontinue the operation of the plant or by making such additions, alterations and improvements as would prevent the escape of the odors, noxious fumes, gases and dust, etc., within twenty days from the service of the notice and that on failure to do so they would be subject to prosecution and fine not less than twenty nor more than five hundred dollars according with the charter and ordinances of the city.

The following provisions of the city charter are discussed in the briefs as bearing on the merits of the cause: Art. III, sec. 26, clause 6, p. 2486, R. S. 1899 (defining the powers of the legislative department of the city government): ". . . . and to regulate or prevent the carrying on of any business which may be dangerous or detrimental to the public health, or the manufacturing or vending of articles obnoxious to the health of the inhabitants; and to declare, prevent and abate nuisances on public or private property, and the causes thereof." Clause 14, same section, p. 2488, is: "Finally to pass all such ordinances, not inconsistent with the provisions of this charter, or the laws of the

State, as may be expedient, in maintaining the peace, good government, health and welfare of the city, its trade, commerce and manufactures, and to enforce the same by fines and penalties not exceeding five hundred dollars, and by forfeitures not exceeding one thousand dollars.''

Article XII relates to the Health Department. Sec. 1 of the article creates the office of Health Commissioner and Board of Health.

Sec. 2. The board to consist of the mayor, the president of the council, a commissioner of police, two physicians and the Health Commissioner. Three members to constitute a quorum.

''Sec. 3. The Health Commissioner shall have general supervision over the public health of said city, and see that its regulations, and the laws and ordinances of said city in relation thereto, are enforced and observed, and for that purpose he is authorized and empowered to make such rules and regulations, with the approval of the board, not inconsistent with this charter or any city ordinances or law of this State, as will tend to preserve and promote the health of said city; to appoint such employees, with the approval of the Board of Health, as may be necessary for the execution of his orders; to enter into or authorize and require any employee or police officer to enter into and examine, in the day time, all buildings, lots and places of every description within the city, and to ascertain and report to him the condition thereof, so far as the public health may be affected by it; to declare and abate nuisances in such manner as may be provided herein, or by ordinance; but all condemnations must first be approved by the Board of Health, whose action thereon shall be final. He shall obey all orders not inconsistent with this charter and city ordinances, emanating from the Board of Health, and shall annually report to the mayor the general operations of his depart-

ment during the year then ended, with such sugges-·
tions for the improvement of the same as he shall con-
sider expedient.''

Section 6 is in part as follows: ''In order to ef-
fect the abatement of nuisances or removal of accumu-
lated filth, the Health Commissioner shall have power
whenever in his opinion such nuisance or filth exists,
and after officially so declared of record by the Board
of Health to notify the owner or owners thereof, or
his   or   their   agents   to abate or remove the
same. . . . If the owner shall fail within the time
. . . to comply with such order, or shall fail to show
good cause to said Health Commissioner why he can-
not or ought not to comply with such order, for which
purpose he shall be entitled to be heard before said
Health Commissioner and Board of Health, if he so re-
quest it, he shall be deemed guilty of a misdemeanor,
and on conviction shall be fined not exceeding five hun-
dred dollars, and the nuisance shall be abated and
special tax bills rendered against the property in the
same manner as against non-residents, except that no-
tice by advertisement shall not be necessary.''

The following city ordinances are also discussed
in the briefs:

''Sec. 616.  It shall not be lawful for any person,
corporation or firm to erect any building for the pur-
pose of manufacturing or producing any article, or to
manufacture or produce any article, the manufacture
of which is injurious to the public health, or which in
the manufacture thereof emits an offensive odor
to   the   extent   of creating a nuisance to the
surrounding inhabitants, without first having ob-
tained the permission so to do from the Municipal As-
sembly by proper ordinance.

''Sec. 617.  Every act or thing done or made, per-
mitted, allowed or continued on any property, public

or private, by any person or corporation, their agents or servants, to the damage or injury of any of the inhabitants of this city and not hereinbefore specified, shall be deemed a nuisance.

"Sec. 631. It shall be the duty of the Health Commissioner, whenever he has any knowledge, or when any complaint has been made to said Health Commissioner by any citizen, that any business, trade or profession carried on in the city, by any person or persons or corporations, agents or managers, is detrimental to public health, or whenever any nuisance or filth exist on the property of any person or corporation, to notify such person or persons or corporation, agent or manager to show cause before the Board of Health at a time and place to be specified in such notice, why the same should not be abated, discontinued or removed, which notice of the Health Commissioner shall not be valid unless served on the party to whom it is directed at least five days before the time specified in such notice (except in case of epidemic or pestilence, when the Health Commissioner may, by general order, direct a shorter time).

"Sec. 632. Such notice shall be served upon said persons, corporation, agent or manager in the same manner as writs of summons are required to be served in civil cases.

"Sec. 634. At the time fixed in such notice for the parties to appear before the Board of Health, said parties may appear in person, by attorney, or cause may be shown by affidavit.

"Sec. 635. After hearing all the facts in the case, if, in the opinion of the Board of Health, no good and sufficient cause be shown why said nuisance, business, trade, or profession should not be abated, discontinued or removed, said board shall direct the health commissioner to order the parties to abate, discontinue or

remove the same within such time as the Health Commissioner may deem reasonable.

"Sec. 636.   Any person or persons failing or refusing to obey the order or orders of the Health Commissioner relating to the abatement of nuisances shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined not less than twenty nor more than five hundred dollars; and such person or persons shall be subject to like fines for each and every day he, she or they shall continue such nuisance, business, trade or profession after the expiration of the time specified in the order of the Health Commissioner for the abatement, removal or discontinuance of the same.   The fines mentioned in this article shall be collected as other fines paid into the city treasury."

In the petition of relators for the writ of *certiorari* they aver that the order of the board declaring their plant a nuisance and ordering its abatement was void because the board had no jurisdiction to make such an order and that its execution would deprive them of their property without due process of law and violate their rights under article 2, sections 30 and 21, Constitution of Missouri, and amendment 14, section 1, U. S. Constitution.   And in their motion to quash the proceedings of the board they aver the infringement not only of their constitutional rights above mentioned but also of section 10, article 1, Constitution United States, and section 15, article 2 of the State Constitution.

Defendants in obedience to the writ of *certiorari* sent the record of the Board of Health relating to this matter to the circuit court and moved the court to quash the writ.

After the record was lodged in the circuit court the relators suggested a diminution in that the record as sent up omitted to show that certain proof offered by relators was rejected by the board and they moved

that the defendants be required to amend the record by supplying that omission. Thereupon the defendants admitted that the evidence was offered as claimed and that it was rejected, but insisted that evidence was no part of the record called for by a writ of *certiorari*.

That evidence was to the effect that relators were operating this plant to make material to be used in the construction of the streets under their contracts with the city and that the city ordinances required that material to be used.

As already said, the circuit court on final hearing quashed the writ of *certiorari* and dismissed the defendants without day.

I. Appellant's first proposition is that since what they were doing was in the line of the performance of their contract with the city and was in the making of the mixture which their contract with the city called for and the city ordinance required, it did not comport with the city's attitude in the situation to declare the operation a nuisance and order its abatement.

We do not gather from the record that either their contracts with the city or the city ordinance under which it was made required the process of melting and mixing to be done in the streets that were to be improved, or that it was to be done as and where it was done; but even if that were so it would not justify the committing of an act destructive of the comfort of the people residing in that vicinity and injurious to the public health. The city itself could not lawfully commit such an act or authorize another to do so. The city has a dual character, administrative and governmental. In its contracts for street improvements it acts in its administrative capacity, and, to some extent, is on a plane with any other party to a business contract. But in the exercise of its police power to protect life and health it acts in its govern-

méntal capacity and is not estopped by its contract, it could not abandon its duty in that respect even if it willed to do so.

We are referred in the brief for appellants to cases that hold that what the law authorizes to be done cannot be declared a nuisance, but that well-known principle has no application to the facts of this case, because there is no law authorizing the act here in question to be done.

Authorities are cited to show also that the city cannot create a nuisance on the property of a citizen and compel him to abate it, but that is foreign to this case.

Randle v. Railroad, 65 Mo. 325, is cited to show that odors, smoke and cinders emitted from locomotive engines in a street were held not to be a nuisance for which an action would lie against the railroad company by an abutting property-owner. But that case was submitted to the court with the express admission on the part of the plaintiff that the defendant had lawful authority to run its engines and trains through that street, and the court said that that admission ended the controversy.

Appellants also refer to section 616 of the general ordinances which says that it shall be unlawful "to manufacture or produce any article the manufacture of which is injurious to the public health, or which in the manufacture thereof emits an offensive odor to the extent of creating a nuisance to the surrounding inhabitants, without first having obtained permission so to do from the Municipal Assembly by proper ordinance."

If appellants mean that the Municipal Assembly could by ordinance authorize them to carry on an operation destructive of public health or loading the atmosphere with offensive odors to the serious annoyance of the surrounding inhabitants we cannot agree

with them. There might arise an imperative necessity when, to prevent a greater calamity, some act temporarily offensive might be authorized, but no such a case is now before us. The record does not show that the city by ordinance or otherwise authorized the act which the Board of Health in this instance condemned as a nuisance, to be done as and where it was being done. The record shows that there were a large number of witnesses examined on both sides and the conclusion of the board was that the relators' works "as operated at present" were prejudicial to the public health and were a nuisance.

A writ of *certiorari* brings up only the record proper of the tribunal to which it is addressed; it does not bring up the evidence (Sholar v. Smyth, 3 Mo. 416; Hicks v. Merry, 4 Mo. 355; Railroad v. State Board, 64 Mo. 294; State ex rel. v. Teasdale, 101 Mo. 174; Ward v. Board of Equalization, 135 Mo. 309; State ex rel. v. Baker, 170 Mo. 383); therefore, the court does not know whether the evidence justified the conclusion of the board or not, but the record does show that the board was dealing with a subject within its peculiar province and that its proceedings were regular; therefore, with its decision we must be satisfied.

II. Appellants contend that the Health Commissioner was disqualified from sitting as a member of the Board of Health, and that since without him there was no quorum when the board acted in this case there was no lawful condemnation of the relators' works.

The alleged disqualification of the Health Commissioner was, in the opinion of appellants, caused by the fact that before the board met to consider the case, to-wit, in the written notice issued by the Health Commissioner to relators, calling them to appear before the board to answer the charge, he stated that in his opinion the works as operated constituted a nuisance and

were detrimental to the public health. It is contended that in a proceeding of this kind the party to be affected is entitled to the same degree of impartiality and freedom from preconceived opinions in the members of the board as the law prescribes for a juror who is to try a cause in court of justice, and we are referred to section 3785, Revised Statutes 1899, relating to jurors challenged for cause. We do not agree to that proposition. Proceedings of this kind from necessity must be conducted with less strictness than the trial of a law suit in a court of justice. Such proceedings must be conducted honestly and fairly and with good common sense, but not necessarily with judicial strictness. If a juror has formed or expressed an opinion in a cause to be tried, we put him aside and call another, but if we put the Health Commissioner aside whom will we call in his place, and if several other members of the board have seen the object complained of and have formed the opinion that it was a nuisance and said so, how is the city to proceed to condemn it?

The Health Commissioner is a city officer exercising duties appertaining to his office alone, independent of his membership in the Board of Health. [Sec. 3, art. 12, charter.] But he is also a member of the Board of Health and in addition to his duties as Health Commissioner he has the duties of a member of the board to perform. In that respect he is like the Mayor, who besides being Mayor and charged with the duties of that office, is also a member of the Board of Health and charged with duties appertaining to that function. In the absence of the Mayor the charter provides that the Health Commissioner shall preside at the meetings of the Board of Health.

By section 3, article 12, the Health Commissioner is required to enter into premises and examine their condition as affecting public health, and "to declare

and abate nuisances in such manner as may be provided herein, or by ordinance."

Then comes section 631 of the general ordinances, above set out, making it his duty, "whenever he has any knowledge," or when a citizen complains to him, that a business is being conducted in a manner injurious to public health or constituting a nuisance, to notify the person so conducting the business to appear before the Board of Health at a time and place to show cause why the nuisance should not be abated. Thus he is required to issue the notice on his own knowledge or on the complaint of a citizen. If complaint is made and instead of issuing the notice at once he should deem it more prudent to visit the premises himself to see if there is reasonable ground for the complaint, it would be within the line of his duty to do so, and if, after inspection, he was satisfied that the thing was a nuisance it would not be improper for him to so inform the proprietors. The charter provision above quoted does not authorize him to abate the nuisance on his own judgment of condemnation, but after saying that he shall declare and abate nuisances, adds: "but all condemnations must be first approved by the Board of Health, whose action thereon shall be final." Thus the law in express terms authorizes the Health Commissioner "to declare" the nuisance, but requires his condemnation to be approved by the Board of Health before it is put into execution. Sec. 3, art. XII of the charter does not mean that the Health Commissioner must in every case first declare the thing a nuisance before the board can pass judgment of condemnation on it, but it does mean that it is the duty of the Health Commissioner, when a matter injurious to public health is brought to his notice or comes under his observation, to declare it a nuisance by force of his own official judgment and give notice to the offending parties to appear before the board and

show cause why the offense should not be abated, and he does not by discharging that duty disqualify himself from the performance of other duties imposed by law in furtherance of the same subject.

III.  Appellants complain that by the proceeding of condemnation before the Board of Health, if it is permitted to stand, they are deprived of their property without due process of law; that the State is impairing the obligation of their contract with the city and denying them the equal protection of the law in violation of their rights under the State and Federal constitutions.

Appellants' complaint on these points lies more in their apprehension of what may hereafter occur than what in fact has occurred.  The city has not, so far as this record shows, laid its hands on the property of relators or on the relators themselves.  The Health Commissioner and the Board of Health have, in the exercise of their authority under the city charter and city ordinances, declared the relators' plant, as it was then and there being operated, a menace to public health and a nuisance, and have notified relators to either abate it or remove it or so alter the mode of operation as to obviate the offensive character of the plant, giving them twenty days in which to do so, and admonishing them that if they neglected to do so they would be subject to a prosecution under the city ordinance wherein they were liable to a fine not less than twenty nor more than five hundred dollars.  That is the extent of the injury, if any, relators have suffered.  If hereafter they should be prosecuted the courts in which the trials may be had, or through which they may pass on appeal, will take care of relators' constitutional rights.

We find no error in the record.

The judgment is affirmed.  All concur.