Ward v. Board of Equalization.

WARD, *Appellant*, v. BOARD OF EQUALIZATION OF
GENTRY COUNTY. *

Division Two, June 30, 1896.

1. **Taxation**: ASSESSMENT: COUNTY BOARD OF EQUALIZATION: CER-
TIORARI.  The action of the county board of equalization in the mat-
ter of assessment of property is subject to review on *certiorari* and
such action, if erroneous, may be quashed.

2. ———: ———: ———: ———.  On such writ of *certiorari* only
matters can be reviewed which appear upon the face of the record,
or go to the jurisdiction of the board.

*The case of *Blacklock v. Board of Equalization* was affirmed on the authority of
the above case on June 30, 1896.

3. ——— : ——— : ——— : ———. The fact that the petitioner on *certiorari* to the board of equalization reads in evidence from a so-called bill of exceptions signed by the board does not make it a part of the record.

4. **Appellate Practice**: EVIDENCE: MOTION FOR NEW TRIAL. The exclusion of testimony by the trial court will not be considered on appeal, unless it was called to the court's attention in the motion for a new trial.

5. **Taxation**: ASSESSMENT OF BANKING PROPERTY: STATUTE: CONSTITUTION. The act of the legislature, approved April 1, 1891, relating to the method of assessing banking property, *held*, constitutional; also, *held*, that the county board of equalization have the authority under said act to increase the value of the bank's corporate stock above that returned by its cashier.

6. ——— : CONSTITUTION: TITLE OF STATUTE. The foregoing act meets the requirement of the constitution (art. 4, sec. 28) that the subject of the act shall be clearly set forth in its title, everything in the body of the act being germane to the title.

*Appeal from Gentry Circuit Court.*—HON. C. A. ANTHONY, Judge.

AFFIRMED.

*C. H. S. Goodman* and *J. W. Sullinger* for appellant.

(1) *Certiorari* is the proper method of correcting an erroneous assessment, as no appeal lies from the action of the board of equalization. *State v. Dowling*, 50 Mo. 134; *State ex rel. v. St. Louis County Court*, 47 Mo. 594; *R. R. v. Board of Equalization*, 64 Mo. 294; Harris on Certiorari, sec. 4, p. 6. (2) Where it appears by the record that there is a gross inequality in the assessment and valuation of property, and that this inequality is the result of the deliberate action of the authorities making such assessment, such inequality will be deemed fraudulent and excessive and will be corrected. *Andrews v. King County*, 1 Wash. 46; *Weeks v. Milwaukee*, 10 Wis. 242; *Solomon v. Town-*

*ship,* 43 N. W. Rep. 990; *Walsh v. King,* 74 Mich. 365; *Pueblo County v. Wilson,* 15 Col. 90; *Buttlemult v. St. Louis Bridge Co.,* 123 Ill. 535. (3) The board of equalization had no authority to assess the value of relator's shares. R. S. 1889, sec. 7519. (4) The action of the board of equalization in raising the value of relator's shares of stock is contrary to the provisions of section 5219, Revised Statutes, United States. *Cummings v. Bank,* 101 U. S. 153; *Pelton v. Bank,* 101 U. S. 143; *People ex rel. v. Weaver,* 100 U. S. 539. (5) The act of the general assembly of the state of Missouri, approved April 1, 1891, Laws 1891, page 195, is unconstitutional and void: *First.* Because it is in conflict with section 28, article 4, of the constitution of the state of Missouri, which requires that the subject of the act shall be clearly expressed in the title. *State v. Burgdoefer,* 107 Mo. 1; *State v. Dumisse,* 109 Mo. 434; Cooley's Cons. Limitations [1 Ed.], pp. 81–83, and 141–150; *Com'rs v. Bentley,* 13 Kan. 607; Sutherland on Statutes, secs. 79, 86; *People v. Allen,* N. Y. 404; *Anderson v. Hill,* 54 Mich. 477; *Ryerson v. Uttley,* 16 Mich. 269; *State v. Smith,* 35 Minn. 257. *Second.* It is in conflict with section 4, article 10, of the state constitution, which requires that all property be taxed in proportion to its value. *State v. Railroad,* 7 Nev. 99; *Andrews v. King County,* 1 Wash. 46; *Weeks v. Milwaukee,* 10 Wis. 242. (6) The court should have granted the relief prayed for, and erred in dismissing relator's petition and denying such relief. *Andrews v. King County,* 1 Wash. 46, and cases cited.

*W. F. Dalbey* and *McCullough & Peery* for respondent.

(1) The writ of *certiorari* brings up for review nothing but the record proper of the inferior tribunal.

This is the doctrine of the earlier as well as the latest authorities.    Bacon's Abr., tit. Certiorari; *Stone v. New York*, 25 Wend. 134; *State v. Dowling*, 50 Mo. 134; *Railroad v. State Board*, 64 Mo. 308; *State ex rel. v. Board*, 108 Mo. 242; *State ex rel. v. Cauthorn*, 40 Mo. App. 96; *State ex rel. v. Mayor*, 57 Mo. App. 192; *House v. Clinton Co. Ct.*, 67 Mo. 522; *State ex rel. v. Smith*, 101 Mo. 174; *State ex rel. v. Edwards*, 104 Mo. 125. (2) Under the provisions of sections 7517, 7518, 7519, *et seq.*, Revised Statutes, 1889, the board of equalization clearly had power and jurisdiction to correct and adjust the assessment of petitioner's bank stock and to make it conform to the law, when all the information necessary to such adjustment and correct assessment, under the act of 1891, was to be found between the four corners of the paper which the petitioner had returned as an assessment list.    *Black v. McGonigle*, 103 Mo. 192; *Taber v. Wilson*, 34 Mo. App. 89; *State ex rel. v. Wray*, 55 Mo. App. 646. (3) The contention of the appellant that the act of 1891 (Sess. Acts 1891, p. 195), is unconstitutional, because the subject of the act is not sufficiently disclosed in the title, can not be sustained.    *Lynch v. Murphy*, 119 Mo. 163, and authorities cited. (4) Equally unfounded is the claim of appellant that the action of the board of equalization, and the provisions of the act of 1891, are in conflict with section 5219 of the Revised Statutes of the United States, relating to the taxation of national banks. Both the order of the board of equalization and the act of the legislature referred to, provide for the taxing of petitioner's shares of stock in the identical manner in which other moneyed capital of the same character is taxed, and this is all that is required. (5) It seems to us that it is idle to talk of an unjust discrimination against the stock of a national bank, when all of the moneyed capital of the citizens of the state, whether

real estate mortgages, solvent notes, shares of stock in state banks, or in manufacturing companies, are to be assessed in identically the same manner. This is all that either the statute law or the constitutional provisions with respect to equality in taxation require. *Lionberger v. Rowse*, 43 Mo. 67; *Glasgow v. Rowse*, 43 Mo. 479. (6) Perfect equality in taxation is not attainable; if taxes are uniform on the same class of subjects within the jurisdiction of the authority levying the tax, this is all that is required; and the legislature is exclusively intrusted with the duty of determining the proper subjects of taxation and the mode and manner of levying taxes. *Railroad v. Maguire*, 49 Mo. 490; *De Arman v. Williams*, 93 Mo. 158.

BURGESS, J.—The petitioner sued out of the circuit court of Gentry county a writ of *certiorari* directed to the board of equalization of that county for the purpose of reviewing the record of said board in the matter of the assessment of the First National Bank of King City in said county, in which said bank the petitioner Ward is a stockholder.

On a hearing in the circuit court the proceedings were dismissed and the petitioner appealed. By the writ which was issued on the twenty-seventh day of October, 1893, the board was commanded to send up a transcript of the record of its proceedings, and also the original assessment list filed with the assessor by the cashier, or chief officer of the bank.

The original assessment list called for in the writ is as follows:

"List of taxable property belonging to or under the control of First National Bank of King City, Gen-

Ward v. Board of Equalization.

try county, state of Missouri, on the first day of June, 1892:

|  | VALUATION. |
|---|---|
| Amount of capital............................................. | $50,000 00 |
| Amount of surplus or reserve................................ | 9,500 00 |
| Amount of undivided profits, premiums or earnings...... . | 374 99 |
|  | 59,874 99 |
| Less real estate and furniture and fixtures ................ | 17,720 00 |
|  | 42,154 99 |
| Less one half, or 50 per cent, to place on same basis of other personal property. ..................................... | 21,077 49 |
|  | $21,077 50 |

"DESCRIPTION OF REAL ESTATE OWNED BY

"Lot 11 and lots 13, 14, 15 and 16, block 3, Carter's 2nd addition to King City, Mo., except 40x70 feet out of S. W. corner of said lots 13, 14, 15 and 16.

| NAMES OF STOCKHOLDERS. | NO. SHARES. | VALUATION. DOLLARS. |  |
|---|---|---|---|
| J. H. Ward............... | 187 | 7954 | Ellis Co. Kansas. |
| D. Bonham........ ... .. | 10 | 420 | Andrew Co. Mo. |
| George Ward...... .. ... | 187 | 7954 | Gentry Co.  " |
| J. H. & Geo. Ward .... .. | 10 | 420 | "   Do |
| Chise Bland.............. | 10 | 420 | "   Do |
| A. T. Gantz.............. | 10 | 420 | "   Do |
| E. E. Blacklock.......... | 10 | 420 | "   Do |
| Wm. Mobley .... ....... | 10 | 420 | "   Do |
| Peter Hammer.... ..... | 10 | 420 | "   Do |
| K. McKinney............ | 5 | 210 | "   Do |
| T. A. McKinney . ...... | 10 | 420 | "   Do |
| J. B. Harper.... ..... .. | 10 | 420 | DeKalb Co. Mo. |
| M. W. Cornett.......... | 10 | 420 | "   Do |
| E. E. Talbot............. .. | 1 | 42 | Jackson Co Mo. |
| John Sherman......... | 10 | 420 | Andrew Co. Mo. |
| James O'Malley  ........ | 10 | 420 | Gentry Co. Mo. |
| Total number of shares...500 | | $21000 | |

"The value of the stock of the bank for taxation, is made by deducting from the capital: first, the real estate, furniture and fixtures; second, from the amount then left 50 per cent, or one half, is taken to place the stock on the same basis or on equality with other personal property.

"STATE OF MISSOURI,
"County of Gentry.    } ss.

"George Ward, Cashier 1st Nat. Bk. of King City, Mo., being duly sworn, states upon his oath that the cash value of all the shares of stock of the First National Bank of King City, Mo., including all reserve funds, undivided profits, premiums or earnings, and all values of property belonging to said corporation, was on the first day of June, 1892, forty-two dollars per share, as per statement and explanation above.

"GEORGE WARD, Cashier.

"Subscribed and sworn to before me this 27th day of Dec., 1892.

"J. D. PELLY, Assessor.

"By GEORGE W. HUNTER."

The record of the board of equalization is as follows:

"In the county board of equalization of said county on the sixth day of April, 1893, the following among other proceedings were had, to wit:

"'Ordered that for the purpose of taxation, the statement of shares of stock together with the statement of reserve funds, undivided profits, premiums, or earnings, and other values, delivered to or furnished the assessor by the chief officers of the several banks in Gentry county be treated as that amount of money less the taxable value of real estate and fixtures belonging to said banks respectively, and the county clerk is hereby directed to extend all taxes levied against said banks on the valuations that are hereby fixed as follows: In accordance with the above:  Bank of Stanberry, $13,438; Farmers Bank of King City, $16,887; Farmers & Mechanics Bank, $14,000; Farmers Bank of McFall, $16,528; First National Bank of King City,

$42,155; Gentry County Bank, $29,000; Bank of Albany, $19,849; Commercial Bank of Stanberry, $10,-000; and in addition thereto the taxable value of real estate and fixtures belonging to said banks respectively, which taxable value of real estate and fixtures is hereby fixed at forty per cent of the valuation of said real estate and fixtures as returned by said banks to the assessor, and the county clerk is directed to enter such assessment thus made upon the land assessment book for the year 1893, and extend the taxes against said valuation as against others.

"In the county board of equalization of said county, on the sixth day of April, 1893, the following among other proceedings were had, to wit:

"Ordered that the secretary give notice through the mail of the fact to all persons owning or controlling property the assessed valuation of which has been raised by this board, specifying the property and the amount raised, and that said board will meet on the fourth Monday in ———, 1893, to hear reasons if any may be given why such increase should not be made.

"In the county board of equalization of said county, on the twenty-fourth day of April, 1893, the following among other proceedings were had, to wit:

"Now appears the following named banks: The First National Bank of King City, The Farmers Bank of King City, The Farmers & Mechanics, of Stanberry, The Bank of Stanberry, The Bank of Albany, The Gentry County Bank, The Commercial Bank of Stanberry, and Farmers Bank of McFall, by their attorneys, C. H. S. Goodman, and J. W. Sullinger, and move the board to continue the hearing of their respective appeals until Saturday the twenty-ninth day of April, 1893, which motion the board after consideration sustains, and the hearing of said appeals is hereby adjourned accordingly.

"In the county board of equalization of said county, on the twenty-ninth day of April, 1893, the following among other proceedings were had, to wit:

"The matter of the assessment based on the list delivered to the assessor by the principal officers of the following named banks to wit: The Bank of Albany, Gentry County Bank, Farmers & Mechanics Bank, Bank of Stanberry, First National Bank of King City, and George Ward, and J. H. Ward, stockholders therein, Farmers Bank of King City, and Farmers Bank of McFall, coming on to be heard and Charles H. S. Goodman, Esq., and J. Wilford Sullinger, Esq., appearing as attorneys for said banks and the persons holding shares of stock therein, and W. F. Dalbey and James W. Witten, Esq., counsel for Gentry county, and the board having heard the objections and reasons offered and the testimony offered in support thereof by the said banks, orders that all further consideration of said matter be postponed and hearing thereof continued until Wednesday the third day of May next.

"In the county board of equalization of said county, on the fourth day of May, 1893, the following among other proceedings were had, viz.:

"The matter of the assessments based on the lists delivered to the assessor by the principal officers of the following named banks, to wit: Bank of Albany, Gentry County Bank, Farmers & Mechanics Bank, Bank of Stanberry, First National Bank of King City, and George and J. W. Ward, stockholders therein, Farmers Bank of King City, and Farmers Bank of McFall, coming on to be heard, and Charles H. S. Goodman, Esq., and J. W. Sullinger, Esq., appearing as attorneys for said banks, and the persons holding shares of stock therein, and William F. Dalbey and James W. Witten, on behalf of the county and the board, having heard the objection made to the action of this board heretofore

taken in relation to the said assessment, and having considered the reasons offered why such action should not be rescinded, orders and directs that so much of said order as relates to the assessment and taxation of the real estate and fixtures of said bank be and the same is hereby rescinded and vacated, and that so much of said order as related to the assessment and taxation of the shares of said banks, and of the reserve funds, undivided profits, premiums or earnings and other values of the said banks be and the same is hereby modified so as to read as follows:   Ordered that for the purpose of taxation the face value of the shares of stock and all reserve funds, undivided profits, premiums, or earnings and other values as shown by lists and statements thereof, furnished to the assessor of Gentry county, Missouri, by the chief officers of the following named banks, to wit: Of the Gentry County Bank, Bank of Albany, Farmers & Mechanics Bank, Bank of Stanberry, First National Bank of King City, Farmers Bank of King City, and Farmers Bank of McFall, be for the purpose of taxation, treated as that amount of money after deducting from the respective amounts so returned by each of said banks the value of the real estate and fixtures belonging to said bank as shown by the statements thereof returned as aforesaid, and that for the purpose of taxation and assessment the values of the shares of stock of each of said banks, except the Bank of Stanberry, shall be ascertained by dividing amounts remaining in each instance after deducting the returned value of the real estate and fixtures as herein before directed, by the whole number of shares of stock of each of said banks respectively, and that said shares of stock of each of said banks where the value thereof is ascertained, shall be assessed to the shareholders in each of said banks, except the Bank of Stanberry as the same appears on and by the lists

furnished as aforesaid, and the taxes thereon extended on said shares of stock at the value thereof so ascertained in the manner heretofore described, and that the sum of —— be assessed and taxed to A. L. Tomblin and Ed. Sager, proprietors of the Bank of Stanberry, and it is further ordered that the assessor's books be corrected and the tax books so made up and the taxes extended so they will conform to this order.

"In the county court of said county, on the fourth day of May, 1893, the following among other proceedings were had, to wit.

"Ordered that the assessor's books be changed and amended, and that the clerk of this court make up the tax books for the year 1893 and extend the taxes thereon in conformity with the actions of the county board of equalization."

All of said orders were properly certified to by the clerk of the county court of said county of Gentry.

It may be conceded that the action of the board of equalization in the assessment of the property of petitioner is subject to review in a proceeding by *certiorari*, and if the assessment be erroneous the action of the board may be quashed. *State ex rel. v. Dowling*, 50 Mo. 134; *State ex rel. v. St. Louis County Court*, 47 Mo. 594; *Railroad v. Board of Equalization*, 64 Mo. 294. But it is well settled that, the writ of *certiorari* only brings up the record, and only such matters as appear from the face thereof, and which go to the jurisdiction of the tribunal, to which the writ is sued out, can be reviewed by such writ.

"The minutes of the proceedings can not be gone into in a proceeding of this nature. Nothing but the record is brought up in an instance like the present." *Railroad v. Board of Equalization, supra; State ex rel. v. Board of Equalization*, 108 Mo. 235. It must therefore follow that no error was committed in refusing to per-

mit the petitioner to introduce evidence *dehors* the record with respect to what occurred before said board, nor in excluding evidence offered by him, as to the values of other property within the county.

Nor did the fact that petitioner was permitted to read in evidence without objection from what he called a bill of exceptions, signed by the members of said board, purporting to contain the evidence adduced by him before that body, and its action thereupon, make it part of the record, as no provision is made by law either common or statutory for any such procedure before such a tribunal.

Moreover, the action of the court in excluding the verbal testimony was one of exception, and in order that it might be considered by this court should have been called to the attention of the trial court in the motion for a new trial, which was not done.

It is not claimed that the county board of equalization was not properly organized, but that it exceeded its authority in raising the *pro rata* valuation of petitioner's shares of stock in said bank from the sum of $42 to $84.31 per share, being a total increase in the valuation of said shares of stock of $8,031. The aggregate value of petitioner's shares as returned by him to the assessor, after deducting the taxable value of their ratable proportion of the real estate and fixtures of said bank was $7,954.

This valuation seems to have been arrived at by adding together the capital stock of $50,000, the surplus or reserve, $9,500, and $374.99, the amount of the undivided profits, making a total of $59,874.99; from which was deducted the value of the real estate, furniture and fixtures, $17,720, leaving a balance of $42,154.99. This last amount was by the petitioner in his capacity of cashier diminished fifty per cent to place, as it is claimed, the same on an equality with other

personal property returned for taxation, leaving a remainder of $21,077.50, which divided by five hundred, the number of shares in the bank, gave $42 as the taxable value of each share, and $7,954, as the total value of petitioner's shares.

By section 7518, Revised Statutes, 1889, power is given said board to hear complaints and to equalize the valuation and assessments upon all real and personal property within the county which is made taxable by law, the only restriction placed upon their power being that they shall not reduce the valuation of the real or personal property of the county below the value thereof as fixed by the state board of equalization. By the section next following, it is made the duty of the board to raise the valuation of all property real and personal, which may have been, in their opinion, returned below its value according to the rules prescribed by statute, etc.

In 1891 the legislature passed an act entitled, "An act to amend article 2, of chapter 138, of the Revised Statutes of 1889, entitled, 'The assessment and collection of the revenue,'" approved April 1, 1891, by which it is provided among other things that: "Persons owning shares of stock in banks, or any joint stock institution or association doing a banking business, * * * incorporated under or by any law of the United States or of this state, shall not be required to deliver to the assessor a list thereof; but the president or other chief officer of such corporation, institution or association shall, under oath, deliver to the assessor a list of all shares of stock held therein and the names of the persons who hold the same, with the face value thereof, and shall also deliver to the assessor a complete statement of all reserve funds, undivided profits, premiums or earnings, and all other values belonging

to such corporations, companies, institutions or asso-
ciations. And such statement of shares of stock, to-
gether with the statement of reserve funds, undivided
profits, premiums or earnings and other values so
delivered to or furnished the assessor, shall, for the
purposes of taxation, be treated as that amount of
money, less the taxable value of the real estate and
fixtures, subject to the right of the parties in interest,
to show the impairment of such shares of stock before
the board of equalization. Private bankers, brokers,
money brokers and exchange dealers shall make like
returns and be assessed and taxed thereon in like
manner as hereinabove provided." Laws 1891, p. 195.

It will thus be seen that the board clearly had the
power and jurisdiction to increase the value which
had been fixed on the petitioner's bank stock, and that
they did so according to the letter and spirit of the
law quoted. They had the assessment list which had
been returned by the bank before them and that fur-
nished the necessary datum from which the assessment
was increased. But petitioner insists that as by the
order of the board of equalization of April 6, 1893,
the taxable value of the real estate and fixtures of the
several banks therein named was fixed at forty per
cent of the value returned by the assessor, the value of
plaintiff's shares of stock being fixed at their face
value, was one and one half times greater than it
should have been had the mandates of section 7519,
Revised Statute, *supra*, been obeyed, and that, the act
of 1891, authorizing the same, was unequal taxation
and invalid because in contravention of section 4,
article 10, of the constitution of the state, which pro-
vides, that "All property subject to taxation shall be
taxed in proportion to its value."

It is conceded by petitioner that perfect equality
of taxation is impracticable, and that much must be

left to the discretion of the legislature, as to the method of ascertaining and equalizing the values of property, but where a gross inequality is provided for by statute and clearly within the inhibition of the organic law, then such statute will be declared inoperative. *Weeks v. Milwaukee*, 10 Wis. 242, is relied upon as sustaining his position that the law of 1891 is unconstitutional, in that it discriminates in the values of taxable property.

The facts in that case showed that land of the value of $300,000 had been released from taxation, and that by reason thereof taxes on the property of plaintiff in the same municipality largely increased, and it was rightly held to be in violation of the provision of the constitution of that state which provides that "the rate of taxation shall be uniform." The property in that case, was of the same kind, while in the case in hand no discrimination was made in the same class or character of property.

By the law of 1891, the rate of taxation is not fixed, nor was there any discrimination made by the board of equalization in the rate of taxation, but it was the same on all kinds and classes of property subject to taxation, the only difference being that on shares of stock in banking institutions and other corporations named in the act, a *prima facie* value is fixed by the act on such shares, while as to other properties the values are fixed by the assessor, subject to the right of the board to lower or raise the same. The face value of such stock is only a *prima facie* value, and is subject to the right of the parties in interest, to show before the board of equalization the impairment of such shares of stock.

The value fixed on such stock is not an arbitrary value, but subject to the right of the owner to appear

before the board, and to show its impaired value, if such be the case.

To the state belongs the sovereign power of taxation, and in the exercise of this power it has the right to provide by proper legislation means for arriving at the values of all taxable property, and for assessing and collecting the revenues, subject only to the limitations and restrictions provided for by the constitution, and " however much this power may be abused by the legislature, the only check upon it is the responsibility of the legislative body to its constituents. Redress against unjust taxation must be sought in the same way, and no other, as redress against unjust and oppressive legislation in the general enactment of laws is sought." *Railroad v. Maguire*, 49 Mo. 490.

A still further contention is that the act of 1891 is unconstitutional because not in compliance with section 28, article 4, of the state constitution, which requires that the subject of the act shall be clearly set forth in its title. The title to the act is as before quoted and purports to be an amendment to article 2, chapter 138, of the Revised Statutes of 1889, entitled, "The assessment and collection of the revenue." Everything in the amendment is germane to the title of the act, that is, to the assessment and collection of the revenues. It contains nothing inconsistent with its title, or that might not be expected to be found under such a title.

It bears no indication whatever of a purpose by the legislators to mislead or deceive, and comes clearly within the rule announced by this court in *Lynch v. Murphy*, 119 Mo. 163, and authorities cited. Even if there were a reasonable doubt as to the constitutionality of the act, it would have to be resolved in favor of its validity, but in our minds there exists no such doubt on the question as to the sufficiency of its title.

Finding no reversible error in the record, the judgment is affirmed. GANTT, P. J., and SHERWOOD, J., concur.