THE STATE ex rel. ASHBY, Collector, v. THREE STATES LUMBER COMPANY, Appellant.

Division Two, July 3, 1906.

1. **LEVEE DISTRICT: Assessment.** An assessment of such lands within the levee district as the assessor believed subject to overflow and as would be benefited by the levee, is not invalid because it did not cover all the lands in the district. The questions as to the liability of all lands embraced in the levee district to overflow or as to all being benefited by a common levee, were not settled by the county court when the district was formed; but the question of assessment for benefits was left to be determined by the assessor, as provided in section 8441, Revised Statutes 1899.

2. ———: ———: **Unassessed Lands.** The assessment of lands benefited is not impaired by the fact that several thousand acres of land within the levee district not benefited by the levee were not assessed.

3. ———: ———: ———: **Uniformity.** The statute requiring the taxes to be extended on the tax book of the county on real estate benefited situated within the levee district, does not violate the rule of uniformity. The rule of equality and uniformity, prescribed in cases of taxation for state and county purposes, does not require that all property or all persons in a county or district shall be taxed for local purposes. Taxation for a local improvement should be made against the persons or property benefited.

4. ———: ———: ———: **Invalidity.** The mere fact that all lands within the levee district benefited by the levee were not assessed with the benefit tax, would not, *ipso facto*, render invalid assessments against other lands that were benefited by the levee and that were legally and properly assessed for levee purposes.

5. ———: ———: **Raised by Board: Collateral Attack.** The county board of equalization has jurisdiction over lands taxed for levee purposes and the authority to raise the assessments for benefits against all the lands, and in so doing it acts judicially, and being judicial its acts in raising assessments cannot be collaterally attacked; for instance, complaint against such action by a defendant sued for the unpaid benefit tax, cannot be heard.

Appeal from Mississippi Circuit Court.—*Hon. Henry C. Riley,* Judge.

AFFIRMED.

*Russell & Deal* for appellant.

(1) The assessment is invalid for the following reasons: 1st. It was not made at the first annual assessment to be made under the general revenue laws of the State after the district was organized. R. S. 1899, sec. 8441. 2nd. It did not cover all the lands in the district, but only such land as the deputy assessors thought would be benefited by the levee or a system of levees that existed at the time the assessment was made only in the imagination of the officers of the district. Stotts v. Wall, 153 Mo. 216. 3rd. The assessment was not made by the assessor at the first annual assessment made under the general revenue laws, but by four deputies appointed who did not assess the value of the lands without the work contemplated, but took the valuation from the assessment book of the preceding year. R. S. 1899, sec. 8441. 4th. The deputies in making the assessments gave the landowners no opportunity to be heard before making the assessment. (2) The taxes sued for are not based upon the assessment made by the assessor and submitted to the landowners' meeting held in July, 1900, but upon the valuation of benefits as fixed by the board of equalization in April, 1901. After the landowners had met and had ascertained the valuation of the land fixed by the assessor as improved by the work proposed and had determined the rate per cent to be levied on that valuation, it was beyond the power of the board of equalization to make any change in that valuation, and a tax based on the valuation as fixed by the board of equalization is invalid.

*Boone & Lee* for respondent.

The assessment was valid, having been made by the assessor at the first annual assessment after he was ordered to make it. R. S. 1899, sec. 8441. What the assessor may do himself he may do by deputy, Ibid, sec. 9140. The assessment covered all the lands that were in the district, the assessor fixing benefits according to his judgment, and if lands could not be benefited, of course no benefits were assessed; this was in compliance with sections 8437 and 8441, Revised Statutes 1899. The case of Stotts v. Wall has no reference whatever to this question of assessment. The board of equalization had the same jurisdiction over this assessment as over assessments for state and county purposes. R. S. 1899, sec. 8449. The duties of the board of equalization are judicial. Black v. McGonigle, 103 Mo. 198; Ward v. Board of Equalization, 135 Mo. 310; Ins. Co. v. Charles, 47 Mo. 466; Railroad v. McGuire, 49 Mo. 483. Appellant had its day in court, there is no pretense that the board of equalization failed in any of its duties; its proceedings were regular, proper notice given, and the result legally published and certified as required by the statutes. If its actions were wrong or unjust, they could have been reviewed on appeal or by *certiorari*. If the landowners' meeting was legal and the assessment valid, then even if the board of equalization did exceed its authority in 1901, only that part of the tax resulting from the increase of assessment would be invalid and before one can obtain relief from that which is illegal he must offer to pay that which is legal. Overall v. Ruenzi, 67 Mo. 207; Dickhaus v. Olderheide, 22 Mo. App. 79. In a suit for delinquent taxes the vital question is, were the taxes legally assessed and extended on the tax books and have they been paid? No informality in the assessment will invalidate a tax. R. S. 1899, sec. 9179. While this is not a tax in the true technical sense of the word, yet it

is levied and collected in the same manner and the same principles govern as are applicable to the levy and collection of other taxes and it is a burden which the majority of the landowners have the right to charge against the lands of the district. Morrison v. Morey, 146 Mo. 545. In assessing the benefits the assessment does not have to charge all the lands in the district, but only such as are benefited. Land Co. v. Miller, 170 Mo. 255.

BURGESS, P. J.—This is an action at the relation of the collector of Mississippi county to enforce the lien of the State and of Levee District No. 1, of Mississippi county, for back taxes for levee purposes. The petition states a case of a levee district duly formed, embracing defendant's lands, an assessment thereon made for levee construction according to the provisions of chapter 124, Revised Statutes 1899, default in payment by defendant, and prays judgment. The answer is a general denial.

The case was submitted to the court on an agreed statement of facts, from which it appears that at the August term, 1892, of the circuit court of Mississippi county, upon petition and notice as required by law, said county court duly organized a levee district designated as Levee District No. 1, embracing within its area about three-fourths of the county. At the same time the court appointed three directors of levees, who duly qualified, and the board was organized as required by the statute.

At the May term, 1893, of said county court, a majority of the board of directors presented to the court a petition representing that, after due consideration, they had agreed to build a levee on a certain line therein designated, subject to the approval of the majority of the landowners within a certain part of the district. specifying by metes and bounds an area of about one-

third of District No. 1, and stating that in the opinion of the petitioners the land so designated would be greatly benefited by a levee to be built as they proposed, and praying that the assessor be directed by the court to assess the value of the lands included in that boundary, as required by sections 6679, 6680 and 6681, Revised Statutes 1889. The assessment for the purpose indicated was made according to the order of the court.

Thereafter, on December 7, 1899, said county court ordered the county assessor, at the first annual assessment to be made by him under the general revenue laws of the State, to assess the value of all lands in·said levee district subject to overflow or inundation from the Mississippi and Ohio rivers or other water courses, and to be benefited by said work, having reference to the value of said lands without the work contemplated. In obedience to said order the assessor, after he had collected most of his assessment lists for state and county purposes from the landowners, appointed four deputies to do the work so ordered. Said deputies, in making said assessment, took no lists from the landowners, but used books which had been prepared by the assessor and in which the value of the lands, without reference to the work contemplated, was taken from the assessment books of the preceding year, and assessed the value of the lands as improved by said work. These books were returned to the assessor, and from them he prepared the assessment books which he filed in the office of the county clerk on January 20, 1900, delivering a copy thereof to the secretary of the board of directors of the levee district. This assessment did not include all of the lands in the district, but only such lands as the deputies thought would be benefited by the work contemplated.

On June 11, 1900, the board of directors of the levee district called a meeting of the landowners thereof to be held on the 21st day of July, 1900, for the purpose of submitting to the landowners the reports, specifica-

tions, surveys, profiles and estimates made by the engineer, also the assessment returned by the assessor, the notice of which meeting described the boundaries of the entire levee district, and was published as required by law. Said meeting was held, and the reports and estimates of the engineer and the assessment of the assessor were laid before the landowners, who voted a tax of forty per centum on the valuation of said lands as fixed by the assessor against the lands, to pay for the work authorized.

In April, 1901, the county board of equalization met, and undertook to readjust the assessment made by the assessor, increasing the valuation of some of the lands and lowering the valuation of others. The board also increased the total valuation of the lands in the district fifteen thousand dollars, about two thousand dollars of which increase was on the lands of the defendant. Thereafter, the board of levee directors ordered that a tax of forty per cent be levied upon the benefits assessed on all lands in the district, to be paid in twenty annual installments of one and one-half per cent each, until the whole forty per cent was paid. This suit was brought to recover of defendant the installment for 1902.

At the trial the plaintiff produced the original tax books for 1900 and 1902, showing that the taxes sued for were levied and extended on the books, and also produced the assessment lists returned by the assessor, properly certified.

The finding and judgment of the circuit court were for the plaintiff. In due time defendant filed motion for new trial, which was overruled, and the case is brought to this court for review.

The first question presented for adjudication upon this appeal is as to the validity of the assessment, which defendant insists is invalid because not made at the first annual assessment after the levee district was organized, as required by section 8441, Revised

Statutes 1899. That section provides that after the formation of any levee district the county court of the county in which such district lies shall cause the county assessor, at the first annual assessment to be made under the general revenue laws of the State, to assess the value of all lands in said levee district subject to overflow or inundation from rivers, and to be benefited by said work, having reference to the value of said land. The assessment in question was made in accordance with the order of the court.

Defendant insists that the assessment was void because it did not cover all the lands in the district, but only such lands as the deputy assessors thought would be benefited by the levee or a system of levees, which did not exist at the time the assessment was made. State ex rel. Stotts v. Wall, 153 Mo. 216, is relied upon as sustaining this contention, but in our opinion it does not do so. The assessment in the case at bar embraced all the lands in the district to be benefited by the levee, the assessor fixing the benefits, and if in his judgment there were lands in the district which could not be benefited by the levee, then no benefits were assessed against them. This was done in accordance with the provisions of sections 8437 and 8441, Revised Statutes 1899. In State ex rel. Stotts v. Wall, supra, there had been a division of the levee district, and a meeting was held at which only a part of the landowners were notified to appear, only about one-third of the district proposed to be levied, all the landowners in the other two thirds of the district being excluded. The question under discussion in that case was as to the validity of that meeting and its actions, and in passing upon the question it was held that all the acts of that meeting were void, and that no tax could be legally assessed or collected, as the result of such acts. In this case, the landowners' meeting was held after proper notice to all the landowners in the district, in conformity to the rule announced in State ex rel. Stotts v. Wall, supra. But it

is said for defendant that the assessment was invalid because the assessors determined for themselves what lands would be subject to overflow in the district and what would not, and assessed only such lands as they thought would be benefited, leaving others unassessed, thus usurping the functions of the county court when it formed the district. It is true that it is said in State ex rel. Stotts v. Wall, supra, that "the questions as to the liability of all the lands embraced in the district to overflow from a point of danger common to all, or as to all being benefited by a common levee, are no longer open. These were questions for the consideration of the county court." The assessors in this case had nothing whatever to do with these questions. They simply assessed the value of all lands in said levee district subject to overflow and to be benefited by said work, having reference to the value of said lands without the work contemplated by the statute, and assessed the value thereof as improved by said work, which they were expressly authorized to do by section 8441, supra. We do not understand the decision in said case to go any further than to hold that the questions as to the liability of all the lands embraced in the district to overflow from the point of danger common to all, or as to all being benefited by a common levee, were settled by the county court when the district was formed; but left the question of assessment for benefits to be determined by the assessor, as provided by section 8441, supra.

A further contention is that it was the duty of the assessors to assess the value of all, not part, of the lands in the levee district subject to overflow, etc., which they failed to do, and assessed only such lands as they thought would be benefited. It would have served no useful purpose to assess the value of lands in the district which would not be benefited and could not be taxed for levee purposes, nor does the statute contemplate any such thing; so that it makes no difference that

several thousand acres of land, not benefited by the levee although in the levee district, were not assessed.

Section 8437, Revised Statutes 1899, says that the taxes shall be extended on the tax book of the county on the real estate to be benefited, situated in said levee district, clearly implying that there may be lands in the district not assessed because not benefited. In Hagar v. Reclamation District, 111 U. S. 701, it is said: "Whenever a local improvement is authorized, it is for the Legislature to prescribe the way in which the means to meet its cost shall be raised, whether by general taxation, or by laying the burden upon the district specially benefited by the expenditure. [County of Mobile v. Kimball, 102 U. S. 691, 704.] The rule of equality and uniformity, prescribed in cases of taxation for state and county purposes, does not require that all property, or all persons in a county or district, shall be taxed for local purposes. Such an application of the rule would often produce the very inequality it was designed to prevent. As we said in Louisiana v. Pilsbury, 105 U. S. 278, 295, there would often be manifest injustice in subjecting the whole property of a city, and the same may be said of the whole property of any district, to taxation for an improvement of a local character. The rule, that he who reaps the benefit should bear the burden, must in such cases be applied." [Land & Stock Co. v. Miller, 170 Mo. 240.]

But even if benefited by the levee, the mere fact that all such lands may not have been assessed would not, *ipso facto,* render invalid the assessment against other lands that were benefited by the levee and that were legally and properly assessed for levee purposes.

In April, 1900, the board of equalization of said county examined the assessment or returns by the assessors, and took no action thereon, but in April, 1901, the board met and readjusted the entire assessment, raising the assessed benefit on some lands and lowering it upon others. It increased the sum total of the

benefits to the land in the district to about fifteen thousand dollars, fifteen hundred dollars of which increase went against the lands of defendant. The defendant contends that the acts of the board of equalization are such violations of the statute, and so out of line with the case of State v. ex rel. Stotts v. Wall, supra, that the judgment should not be permitted to stand. But the county board of equalization had jurisdiction over the lands taxed for levee purposes (sec. 8449, R. S. 1899), and the authority to raise the assessments for benefits against all the lands (sec. 9131, R. S. 1899), and in so doing it acted judicially. [Black v. McGonigle, 103 Mo. 192; St. Louis Mutual Life Ins. Co. v. Charles, 47 Mo. 465; Railroad v. Maguire, 49 Mo. 483; Cooley on Taxation (1 Ed.), 291; Ward v. Board of Equalization, 135 Mo. 309.] In raising the rate of taxation against the lands in the levee district it was sufficient for the board to designate a percentage of increase. [1 Cooley on Taxation (3 Ed.), 786.] It is not claimed that the board of equalization failed in any of its duties. Its proceedings were regular, proper notice given, and the result legally published and certified as required by the statute. The act of the board in raising the assessment being judicial in its character is not subject to attack in this collateral way. There is nothing in Stotts v. Wall which seems to be in conflict with what we have said.

It is admitted that the taxes sued for are unpaid. The taxes seem to have been regularly assessed, levied, extended on the tax books and certified to the collector. Our conclusion is that the judgment should be affirmed. It is so ordered. All concur.