STATE OF MISSOURI ex rel., Relator, v. H. C.
GILBERT et al., Judges of the County Court of
Jackson County, Respondents.

**Kansas City Court of Appeals, June 3, 1912.**

1. **DRAMSHOP LICENSE: Remonstrance: Appointment of Commissioner.** Where an application for a license to keep a dramshop is contested by a remonstrance, it is not improper for the county court, on agreement of the parties, to appoint a competent person to meet with the parties or their attorneys to canvass the names of petitioners and remonstrants, to sift out the names of those agreed to be incompetent signers and those agreed to be qualified.

2. ————: ————: **County Court: Certiorari: Jurisdiction: Mistakes.** The county court has exclusive jurisdiction in the matter of granting dramshop licenses and so long as its record shows that it did not go beyond its jurisdiction in the procedure for a license and in granting the license, its decision cannot be questioned by writ of *certiorari*. Errors or mistakes in law or fact cannot be questioned or corrected in such procedure.

### Original Proceedings. Certiorari.

ANNULMENT OF LICENSE REFUSED.

*H. S. Williams* for relator.

*J. G. L. Harvey* and *Cooper & Wilson* for respondents.

ELLISON, J.—The county court of Jackson county granted a license to W. H. Dixon to keep a dramshop at 915 Walnut street, Kansas City, Mo., for six months from January 4, 1912. Whereupon certain objectors obtained from this court a writ of *certiorari*, whereby it is sought to annul the license.

It appears that in proper time Dixon filed with the county court of Jackson county, Mo., his application for a license to keep a dramshop at 915 Walnut

street, Kansas City, Mo., for a period of six months from the 4th day of January, 1912. A petition purporting to be signed by properly qualified petitioners and sufficient in number, accompanied the application. Thereafter, on the 29th of December, 1911, a remonstrance was filed with the court against granting the license. Those signing the remonstrance denied the qualification as legal petitioners of numbers of those signing the petition; and alleged, as a matter of fact, that the names of qualified petitioners appearing on the petition did not constitute a majority of the assessed taxpaying citizens, and guardians of minors, owning property in the block where he sought to have his dramshop.

It appears by the record that there were a large number of petitioners and remonstrants, and the legal qualifications of these, under the provisions of the statute, involved the investigation of so many names it was agreed by the applicant and the remonstrants that the court should appoint the county license inspector to canvass the names with the respective attorneys, and ascertain those which could be agreed upon as qualified petitioners in the block who had signed the petition, and those in the block qualified to sign petitions but who had not done so. The inspector and the respective attorneys came together and canvassed the names. But while the attorney for the remonstrators agreed there were 158 qualified petitioners on Dixon's petition, the balance were challenged. When the canvass of the qualification of the names of the remonstrators was begun, disagreement soon became apparent, the attorney for the remonstrators asserting that under the claim of the attorneys for the applicant as to the qualifications necessary for a remonstrant, there were only about twenty names on his list, and he therefore declined to proceed further. Thus the canvassing ended and the inspector so reported to the court.

The remonstrators then moved the county court to strike out the inspector's report, on the ground, first, that they had admitted certain names signed to the petition were qualified peitioners when, under a ruling of that court, they were not legal petitioners; and, second, that the applicant had made frivolous objections to names on the remonstrance to the effect that citizens, otherwise qualified, who were tenants under leases that prohibited them from signing a dramshop petition, "were not to be counted as not on said petition on account of said lease." And, third, "because the appointment of a referee was not provided for by law but was merely a suggestion of the court and was not binding on the parties to the contest."

That motion was overruled by the county court "for the following reasons," as stated in the record: "First, that the said referee was appointed at the request and with the consent of all parties. Second, that after said report of said referee was filed, it was agreed by all parties in open court that said report was true and correct." It is then recited in the record that, "Whereupon said attorneys for the remonstrators refuse to go on further with the case."

The record then recites that Dixon's application was taken up for hearing by the court, that evidence was heard and a finding made that the applicant was a properly qualified person to keep a dramshop and that his petition was signed by a majority of the assessed taxpaying citizens, and guardians of minors, owning property in the block in which the dramshop is to be kept. All other findings were made by the court as to the requisites made necessary by the statute having been complied with. In short, the record entry of the findings and judgment of the court shows a regular and legal procedure for a dramshop license and ends with an order that a license be issued.

The only reason given by relator against the validity of the license, in his petition for the writ, is

that the county court granted the license without hearing evidence as to the qualification of signers of the petition and remonstrance, although it was demanded that such evidence be heard. The record returned does not support this allegation; but on the contrary, refutes it.

And the sole objection made against the proceeding of the county court, as set forth in brief of points and authorities, is that the court "had no authority in law to appoint a commissioner or referee to act in place of the court to canvass names on the petition and remonstrance."

There are two reasons why we cannot sustain the objection. First, the record shows that this was done at the request and by the consent of the parties and that all appeared before the commissioner to canvass names, and no objection appears to have been made to the right of the court to appoint him, until after he made his report. It was stated, and not questioned, that in Jackson county there are near six hundred saloons licensed. It is readily seen that contests over the qualification of each signer of a petition for, or a remonstrance against, a license, could be such as to make an extended hearing by the court impracticable. We therefore do not see any legal objection to the court appointing some competent person, when requested by the contesting parties, to canvass the names of petitioners and remonstrants and agree upon those who are legally qualified. The person appointed would not usurp the functions of the court nor bind it to a certain decision. As a practical matter, in the disposal of such business, the court would, doubtless, accept the agreement of the contesting parties in determining whether the petition was properly signed.

Second, in this case there is nothing in the record to show that the inspector in any way assumed to say whether the applicant was, or was not, entitled to a license. He made no finding whatever, not even stat-

ing whether the petition contained the requisite number of petitioners. On the contrary, so far as appears by the record, the county court, after a regular hearing, made its finding from the law and the evidence.

Under the writ of *certiorari,* we can only examine the record sent up, and if it shows that the proceedings were of matters over which that court had exclusive jurisdiction, as is the case with dramshop licenses, and that it has not exceeded that jurisdiction, we cannot interfere. We cannot entertain an appeal from the decision of that court to see if it made a mistake in law or fact. If that could be done, we would find ourselves under the necessity of considering whether proper evidence was heard and proper conclusions were reached. By doing this we would overreach our own jurisdiction. We have nothing to .do with the propriety of the court's action, or the correctness of its decision, so long as it acts within the limit of its jurisdiction. [State ex rel. v. Cauthorn, 40 Mo. App. 94; State ex rel. v. County Court, 45 Mo. App. 387; State ex rel. v. Mayor, etc., 57 Mo. App. 192.] The validity of the county court's action must be adjudged by what is shown upon the face of its record. [State ex rel. v. Patterson, 229 Mo. 364, 368; Ward v. Board of Equalization, 135 Mo. 309, 319; Hannibal & St. Joe Ry. Co. v. State Board, 64 Mo. 294.]

So far as is shown by the record in this case, the license was properly granted, and the action of the county court will not be disturbed. All concur.